**No. 26-2423**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

**PHILLYWINE LLC,**
**Appellant,**

**v.**

**KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC,**
**ALANA ZERBE and KEITH WALLACE,**
**Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(2:26-cv-01268)

# APPELLEES' MOTION FOR PERMISSION TO FILE SUPPLEMENTAL APPENDIX

Christopher C. Nana-Sinkam
David A. Rodkey
Stanford B. Ponson
Samantha A. Gill
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
cns@dilworthlaw.com
drodkey@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Appellees*

# MOTION FOR PERMISSION TO FILE SUPPLEMENTAL APPENDIX

Appellees KSWCO LLC, SALKEDS LLC, The National Wine School LLC, Alana Zerbe, and Keith Wallace ("Appellees") hereby move this Honorable Court for permission to file a Supplemental Appendix, stating as follows:

1. On February 26, 2026, Appellant PhillyWine LLC ("Appellant") filed a Complaint, asserting various trademark infringement claims against Appellees.

2. On the same day, Appellant filed a Motion for Preliminary Injunction (the "Motion"), requesting that the District Court enjoin Appellees from using their registered trademark.

3. On May 26, 2026, the District Court denied the Motion and issued an accompanying memorandum in support of its decision.

4. On June 5, 2026, Appellant filed a Notice of Appeal from the District Court's Order denying the Motion.

5. On July 16, 2026, counsel for Appellant emailed Appellees' counsel with a list of documents it proposed should be included in the Appendix (the "Proposed Appendix"). A true and correct copy of the email chain between counsel, as well as the Proposed Appendix, is attached hereto as **Exhibit A**.

6. Appellees' counsel responded to this email on the same day, indicating it would agree to an Appendix that included the injunction papers and all exhibits attached thereto. *See* Ex. A at 2.

7. Counsel for Appellant responded, agreeing the Appendix should include “all of the parties’ injunction papers.” *See id.* at 1.

8. On September 28, 2026, Appellant filed its Opening Brief in this Court, as well as its Appendix containing certain documents from the record in the District Court.

9. Noticeably, Appellant’s Appendix omits its Memorandum of Law in Support of Its Motion for Preliminary Injunction (ECF 6-2), which had been included in Appellant’s Proposed Appendix (*see* Ex. A at 8).

10. Appellant’s counsel never notified Appellees’ counsel of any departure from that proposal. (*See* Ex. A.)

11. Moreover, the first issue raised by Appellant in its Opening Brief is that the District Court erred by misperceiving the issue before it. *See* Br. at 28.

12. As made clear by Appellant’s Memorandum of Law in Support of Its Motion for Preliminary Injunction, however, Appellant requested the District Court’s review of the very issue Appellant now argues the court erred in addressing.

13. Federal Rule of Appellate Procedure 30 permits memoranda of law for motions before the district court to be included in the appendix if the memoranda have independent relevance.

14. Because Appellant is challenging the issue decided by the District Court, which is the exact issue Appellant requested the District Court to review in

its Memorandum of Law, the Memorandum thus has independent relevance to this appeal and should be included in the Appendix.

15. As such, Appellees now move for permission to supplement the Appendix to add Appellant's Memorandum of Law in Support of Its Motion for Preliminary Injunction.

16. Granting Appellees such leave will assist the Court in resolving the issues in this matter on appeal.

17. Appellees' request is reasonable and for good cause, and will not unduly delay this action or prejudice the parties.

WHEREFORE, Appellees respectfully request that the Court enter the Proposed Order submitted herewith granting it leave to supplement the Appendix, and directing the Clerk of Courts to accept the Supplemental Appendix to be filed contemporaneous to the instant Motion.

Dated: October 27, 2026

Respectfully submitted,

*/s/ David Rodkey*

Christopher C. Nana-Sinkam
David A. Rodkey
Stanford B. Ponson
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
cns@dilworthlaw.com
drodkey@dilworthlaw.com
sponson@dilworthlaw.com
*Attorneys for Appellees*

**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

PHILLYWINE LLC,

Appellant,

v.

CASE NO. 26-2423

KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC, ALANA ZERBE and KEITH WALLACE,

DIST. CT. CASE NO. 2:26-cv-01268

Appellees.

**ORDER**

AND NOW, this __________ day of __________________, 2026, upon consideration of Appellees KSWCO LLC, SALKEDS LLC, The National Wine School LLC, Alana Zerbe, and Keith Wallace's Motion for Permission to File Supplemental Appendix, **IT IS HEREBY ORDERED** that the Motion is **GRANTED**. The Clerk of Courts is directed to accept for filing the Supplemental Appendix filed on October 27, 2026.

_________________________
J.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, a true and correct copy of the foregoing Motion for Permission to File Supplemental Appendix was served via the Court's ECF System upon all counsel of record in this matter.

*/s/ David Rodkey*

# EXHIBIT A

## Gill, Samantha

**From:** Barry.Horwitz@gtlaw.com
**Sent:** Thursday, July 16, 2026 10:21 PM
**To:** Rodkey, David A.; Nana-Sinkam, Christopher C.; Ponson, Stanford B.; Gill, Samantha
**Cc:** Brian.Feeney@gtlaw.com; Ballon@gtlaw.com; trachtenbergm@gtlaw.com; carrm@gtlaw.com; Barry.Horwitz@gtlaw.com
**Subject:** RE: PhillyWine LLC v. KSWCO LLC et al. - Case No. 26-2423 - Appeal Appendix
**Attachments:** Proposed Contents of Appeal Appendix.docx

**This message is from an external sender.**

---

Hi Dave,

I guess I could have been clearer, or perhaps you did not see the document attached to my email. But I also don't feel like you should be talking down to me, or reminding me that we appealed a ruling on a preliminary injunction, or what that means the appendix should include.

We agree with you. The record should include the complaint and all of its exhibits, and all of the parties' injunction papers plus exhibits. The document attached to my email (attached here again) sets forth everything we believe should be included in the appeal appendix. So please, review that document. We don't think we're omitting anything, but to the extent you believe we are, please let us know and we can discuss it.

We look forward to you responding once you've reviewed what we listed in the document and if you think anything else should be included in the appendix. Thank you.

Barry

**Barry Horwitz**
Shareholder

Greenberg Traurig, LLP
360 North Green Street | Suite 1300 | Chicago, IL 60607
T +1 312.456.1037 | F +1 312.899.0408 | C +1 847.769.2212
Barry.Horwitz@gtlaw.com | www.gtlaw.com | View GT Biography

GT GreenbergTraurig

---

**From:** Rodkey, David A. <drodkey@dilworthlaw.com>
**Sent:** Thursday, July 16, 2026 9:14 PM
**To:** Horwitz, Barry (Shld-CHI-IP-Tech) <Barry.Horwitz@gtlaw.com>; Nana-Sinkam, Christopher C. <cns@dilworthlaw.com>; Ponson, Stanford B. <sponson@dilworthlaw.com>; Gill, Samantha <sgill@dilworthlaw.com>
**Cc:** Feeney, Brian T. (Shld-PHIL-LT) <Brian.Feeney@gtlaw.com>; Ballon, Ian (Shld-LA-SV-LT-IP-TECH-ENT) <Ballon@gtlaw.com>; Trachtenberg, Marc H. (Shld-ASP-IP-Tech) <trachtenbergm@gtlaw.com>; Carr, Molly J. (Assoc-CHI-IP-Tech) <carrm@gtlaw.com>; Horwitz, Barry (Shld-CHI-IP-Tech) <Barry.Horwitz@gtlaw.com>
**Subject:** Re: PhillyWine LLC v. KSWCO LLC et al. - Case No. 26-2423 - Appeal Appendix

***EXTERNAL TO GT***

Hi Barry,

You appealed a ruling on a preliminary injunction. The record should be the parties' injunction papers plus all exhibits the court did or could have considered. If there's anything beyond that you want to include, just let us know, and we'll consider. If you're omitting anything, then we're not inclined to agree to that.

In this situation, I think the court would expect the full record to be the injunction filings and all exhibits attached thereto. If you see it differently, let us know why.

Thanks,
Dave

Get Outlook for iOS

---

**From:** Barry.Horwitz@gtlaw.com <Barry.Horwitz@gtlaw.com>
**Sent:** Thursday, July 16, 2026 9:56 PM
**To:** Rodkey, David A. <drodkey@dilworthlaw.com>; Nana-Sinkam, Christopher C. <cns@dilworthlaw.com>; Ponson, Stanford B. <sponson@dilworthlaw.com>; Gill, Samantha <sgill@dilworthlaw.com>
**Cc:** Brian.Feeney@gtlaw.com <Brian.Feeney@gtlaw.com>; Ballon@gtlaw.com <Ballon@gtlaw.com>; trachtenbergm@gtlaw.com <trachtenbergm@gtlaw.com>; carrm@gtlaw.com <carrm@gtlaw.com>; Barry.Horwitz@gtlaw.com <Barry.Horwitz@gtlaw.com>
**Subject:** PhillyWine LLC v. KSWCO LLC et al. - Case No. 26-2423 - Appeal Appendix

**This message is from an external sender.**

---

Counsel:

To make things easier for the appeals court, we think it makes sense for both sides to agree on the materials to include in an appeal appendix. To that end, we have prepared the attached document summarizing what we believe should be included in that appendix. Please review and let us know if you believe anything else should be included. If not, then we can prepare the appendix so that both sides can easily cite to the same materials. Thank you.

Best regards,
Barry

**Barry Horwitz**
Shareholder

Greenberg Traurig, LLP
360 North Green Street | Suite 1300 | Chicago, IL 60607
T +1 312.456.1037 | F +1 312.899.0408 | C +1 847.769.2212
Barry.Horwitz@gtlaw.com | www.gtlaw.com | View GT Biography

GT GreenbergTraurig

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

Proposed Appeal Appendix

**Dkt. 1 – Complaint – Filed 02-26-2026**

- Dkt. 1 Complaint
- Dkt. 1-3 Exhibit 1
  - *Declaration of Neal Ewing, executed 02/13/26*
- Dkt. 1-3 Exhibit A to Ewing Decl.
  - *True and correct screenshots dated 01/21/26 of WSET website*
- Dkt. 1-3 Exhibit B to Ewing Decl.
  - *True and correct screenshots dated 01/22/26 of APP section of WSET website*
- Dkt. 1-3 Exhibit C to Ewing Decl.
  - *True and correct screenshot dated 01/21/26 of WhoIs record of phillywine.com*
- Dkt. 1-3 Exhibit D to Ewing Decl.
  - *True and correct screenshots dated 01/22/26 of phillywine.com*
- Dkt. 1-3 Exhibit E to Ewing Decl.
  - *True and correct screenshots dated 01/22/26 of article titled "Top Sommelier Classes in Philadelphia Ranking and Affordable"*, pgs. 46-52
  - *True and correct screenshot dated 01/22/26 of PhillyWine's profile on Shaw Guides*, pg. 53
  - *True and correct screenshots dated 01/23/26 of Somm article titled "Top Sommelier Certification in Philadelphia Wine Schools" posted 10/31/16*, pgs. 54-58
- Dkt. 1-4 Exhibit 2 to Complaint
  - *True and correct copy of correspondences dated 08/03/22-08/04/22 between Neal Ewing, Noelle Allen, and Matt Kirkland*, pgs. 1-3
  - *True and correct screenshot dated 02/13/26 of Neal Ewing's LinkedIn profile*, pgs. 4-5
- Dkt. 1-5 Exhibit 3 to Complaint
  - *True and correct screenshots dated 02/18/26 of PhillyMag article titled "Tasting classes offer more than just a social scene" posted 10/04/07, pgs. 1-7*
  - *True and correct screenshots dated 02/18/26 of PhillyMag article titled "Area wine classes" posted 10/02/14, pgs. 8-11*
- Dkt. 1-6 Exhibit 4 to Complaint
  - *True and correct screenshot dated 02/18/26 of Secretary of State record for PhillyWine LLC*
- Dkt. 1-7 Exhibit 5 to Complaint
  - *True and correct screenshots dated 02/18/26 of PhillyWine.com*
- Dkt. 1-8 Exhibit 6 to Complaint
  - *True and correct screenshots dated 01/21/26 of vinology.com (current and archived)*
- Dkt. 1-9 Exhibit 7 to Complaint
  - *True and correct copy of domain name registration record for vinology.com, pgs. 1-4*
  - *True and correct copy of domain name registration record for winelust.com, pgs. 5-6*
  - *True and correct screenshots dated 02/19/26 of archived webpages of winelust.com, pgs. 7-8*
  - *True and correct screenshots dated 02/19/26 of archived webpages of winelust.com, pgs. 9-12*

- Dkt. 1-10 Exhibit 8 to Complaint,
  - True and correct screenshots dated 01/21/26 from https://www.vinology.com/wset-philly/ pgs. 1-6
  - *True and correct screenshots dated 02/15/26 of vinology.com/wset-philly ("404 - Page not found"), pgs. 7-8*
  - *True and correct screenshots dated 02/24/26 of vinology.com/wset-philly, pgs. 9-13*
- Dkt. 1-11 Exhibit 9 to Complaint
  - *True and correct screenshots dated 01/21/26 of phillymag.com article titled "Forget Presents, Gift These Philly Food and Drink Classes for the Holidays", pgs. 1-16*
  - *True and correct screenshots dated 01/21/26 of Keith Wallace's Instagram post sharing the phillymag.com article, pgs. 17-19*
- Dkt. 1-12 Exhibit 10 to Complaint
  - *True and correct copy of TEAS Plus application Serial No. 98869526 for PHILLY WINE SCHOOL, filed 11/23/24, pgs. 1-3*
  - *True and correct copy of specimen submitted with application Serial No. 98869526, pg. 4*
  - *True and correct screenshots dated 02/18/26 of specimen as displayed in USPTO TSDR document viewer, pgs. 5-6*
- Dkt. 1-13 Exhibit 11 to Complaint
  - *True and correct screenshots dated 02/19/26 of archived webpage of vinology.com (archived 12/03/24), pgs. 1-18*
  - *True and correct screenshots dated 02/19/26 of archived webpage of vinology.com (archived 11/21/24), pgs. 19-27*
- Dkt. 1-14 Exhibit 12 to Complaint
  - *True and correct copy of USPTO Office Action issued 07/28/25 for application Serial No. 98869526*
- Dkt. 1-15 Exhibit 13 to Complaint
  - *True and correct copy of Response to Office Action for application Serial No. 98869526, signed 09/07/25, with accompanying exhibits*
- Dkt. 1-16 Exhibit 14 to Complaint
  - *True and correct screenshots dated 02/19/26 of "About The Owners" webpage of Chicago Wine & Sommelier School (wineandsommelier.com)*
- Dkt. 1-17 Exhibit 15 to Complaint
  - *True and correct copy of registration certificate for U.S. Reg. No. 8,055,977 (PHILLY WINE SCHOOL), registered 12/09/25*
- Dkt. 1-18 Exhibit 16 to Complaint
  - *True and correct copy of email dated 12/18/25 from Instagram to Noelle Allen regarding deactivation of PhillyWine's Instagram account*
- Dkt. 1-19 Exhibit 17 to Complaint
  - *True and correct screenshots dated 02/19/26 of SOMM webpage titled "PhillyWine School: Ratings and Reviews for this WSET School", pgs. 1-7*
  - *True and correct screenshot of email dated 01/13/26 from Keith Wallace announcing "Philly Wine School" nomination for Philadelphia Inquirer's Philly Favorites, pg. 8*

- *True and correct copy of email dated 12/18/25 from Instagram regarding deactivation of PhillyWine's Instagram account, pg. 9*
- *True and correct copy of email dated 12/21/25 from Facebook regarding trademark appeal, pg. 10*
- *True and correct copy of email dated 01/05/26 from Squarespace regarding trademark complaint against phillywine.com, pgs. 11-12*

- Dkt. 1-20 Exhibit 18 to Complaint
    - *True and correct screenshots dated 02/15/26 of vinology.com/wset-philly ("404 - Page not found"), pgs. 1-3*
    - *True and correct screenshots dated 02/24/26 of updated vinology.com/wset-philly, pgs. 4-8*
- Dkt. 1-21 Exhibit 19 to Complaint
    - *True and correct screenshot dated 02/20/26 of @phillywineinstructor Instagram account*
- Dkt. 1-22 Exhibit 20 to Complaint
    - *True and correct copy of email dated 12/02/25 from Jerry Huller to Noelle Allen regarding "Misuse of name?", pgs. 1-2*
    - *True and correct screenshots dated 02/19/26 of localwineevents.com listing titled "Core Sommelier Course (Winter Semester)", pgs. 3-7*
    - *True and correct screenshots dated 02/19/26 of localwineevents.com listing titled "Wine 101: Learn About Wine At The Philly Wine School", pgs. 8-10*
    - *True and correct screenshots dated 02/19/26 of localwineevents.com page of upcoming events hosted by "Philly Wine School", pgs. 11-13*
- Dkt. 1-23 Exhibit 21 to Complaint
    - *True and correct screenshots dated 02/19/26 of Google search results for "phillywine philadelphia" showing location reviews of PhillyWine*
- Dkt. 1-24 Exhibit 22 to Complaint
    - *True and correct screenshots dated 02/19/26 of Google search results for "phillywine"*
- Dkt. 1-25 Exhibit 23 to Complaint
    - *True and correct copy of printed source code of vinology.com webpages with references to "Philly-Wine-School" image file names highlighted*
- Dkt. 1-26 Exhibit 24 to Complaint
    - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Philly Wine School: Upcoming Tasting Classes in Philadelphia"*
- Dkt. 1-27 Exhibit 25 to Complaint
    - *True and correct screenshots dated 02/19/26 of prnewswire.com press release titled "Announcing the National Wine School", pgs. 1-4*
    - *True and correct screenshots dated 02/26/26 of wineschool.us webpage titled "Credential Pathway for Wine Schools and Universities", pgs. 5-7*
- Dkt. 1-28 Exhibit 26 to Complaint
    - *True and correct screenshots of online reviews regarding National Wine School certifications, pgs. 1-4*
    - *True and correct screenshots dated 02/19/26 of Reddit thread on r/wine titled "This came in the mail last night", pgs. 5-11*

Proposed Appeal Appendix

- Dkt. 1-29 Exhibit 27 to Complaint
  - *True and correct screenshots dated 02/21/26 of wineschool.us webpage titled "Why National Wine School Certifications Lead the U.S. Wine Trade"*
- Dkt. 1-30 Exhibit 28 to Complaint
  - *True and correct screenshots dated 02/19/26 of DomainTools Iris Investigate WhoIs history records for somm.us*
- Dkt. 1-31 Exhibit 29 to Complaint
  - *True and correct screenshots dated 02/19/26 of X account of "Claire Seroskie" (@somm_us), pgs. 1-8*
  - *True and correct screenshots dated 02/19/26 of Fort Lewis College faculty directory, pgs. 9-11*
- Dkt. 1-32 Exhibit 30 to Complaint
  - *True and correct screenshots dated 02/19/26 of "Claire Seroskie" Quora profile (followers), pgs. 1-4*
  - *True and correct screenshots dated 02/19/26 of "Maeghan Kresge" Quora profile (following), pgs. 5-6*
  - *True and correct screenshots dated 02/19/26 of "Maeghan Kresge" Quora profile (followers), pgs. 7-8*
  - *True and correct screenshots dated 02/19/26 of "Claire Seroskie" Quora profile (following), pgs. 9-10*
  - *True and correct screenshots dated 02/19/26 of "Claire Seroskie" Quora profile (answers), pgs. 11-13*
  - *True and correct screenshots dated 02/19/26 of "Claire Seroskie" Quora profile, pgs. 14-20*
- Dkt. 1-33 Exhibit 31 to Complaint
  - *True and correct screenshots dated 02/19/26 of SOMM article titled "Top Wine School: Wine School of Philadelphia Leads 2025", pgs. 1-5*
  - *True and correct screenshots dated 02/19/26 of SOMM webpage titled "Top Wine School in America - Wine School of Philadelphia", pgs. 6-12*
  - *True and correct screenshots dated 02/19/26 of SOMM webpage titled "National Wine School: Accredited Certification Agency", pgs. 13-19*
  - *True and correct screenshots dated 02/19/26 of archived SOMM webpage titled "Wine School of Philadelphia - A Top 5 Wine School in America" (archived 03/28/23), pgs. 20-25*
  - *True and correct screenshots dated 02/19/26 of archived SOMM webpage titled "The Top Wine Schools in America" (archived 06/21/23), pgs. 26-29*
- Dkt. 1-34 Exhibit 32 to Complaint
  - *True and correct screenshots dated 02/25/26 of SOMM webpage titled "Sommelier Certification Guide (Levels, Costs & Best Programs Ranked 2026)", pgs. 1-8*
  - *True and correct copy of printed source code dated 02/25/26 of somm.us/sommelier-certification-101 with "author" lines highlighted, pgs. 9-53*
  - *True and correct screenshots dated 02/25/26 of SOMM webpage titled "Discover Top Wine Schools Ranked by Experts", pgs. 54-58*
  - *True and correct copy of printed source code dated 02/25/26 of somm.us/top-ranked-wine-schools-in-america with "author" lines highlighted, pgs. 59-116*

- Dkt. 1-35 Exhibit 33 to Complaint
  - *True and correct screenshots dated 02/19/26 of vinology.com homepage, pgs. 1-6*
  - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Philadelphia Sommelier Courses: Learn About Wine", pgs. 7-12*
  - *True and correct screenshots dated 02/19/26 of mapquest.com page for Wine School of Philadelphia, pgs. 13-16*
  - *True and correct screenshots dated 02/19/26 of yelp.com page for Wine School of Philadelphia, pgs. 17-28*
  - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Top-Ranked Wine Education: Sommelier Certification in Philly", pgs. 29-36*
  - *True and correct screenshots dated 02/19/26 of yelp.com page for Wine School of Philadelphia, pgs. 37-48*
  - *True and correct screenshots dated 02/19/26 of wineschool.us webpage titled "Top Sommelier Certifications & Wine Education", pgs. 49-53*
  - *True and correct screenshots dated 02/26/26 of X account of Wine School of Philadelphia (@wineschool), pgs. 54-55*
  - *True and correct screenshots dated 02/26/26 of delawarescene.com page for Wine School of Philadelphia, pgs. 56-58*
  - *True and correct screenshots dated 02/26/26 of vinology.tenereteam.com webpage titled "Vinology Reviews - Read Customer Reviews of Vinology.com", pgs. 59-61*
- Dkt. 1-36 Exhibit 34 to Complaint
  - *True and correct screenshots dated 02/19/26 of SOMM webpage titled "PhillyWine School: Ratings and Reviews for this WSET School", pgs. 1-7*
  - *True and correct screenshots dated 02/19/26 of Reddit thread on r/wine titled "Is PhillyWine a good school for me to take WSET classes?", pgs. 8-12*
- Dkt. 1-37 Exhibit 35 to Complaint
  - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Over 300 Comprehensive Wine School of Philadelphia Reviews"*
- Dkt. 1-38 Exhibit 36 to Complaint
  - *True and correct screenshots dated 02/19/26 of Keith Wallace blog post on vinology.com titled "Keith Wallace Doesn't Care What Wine You Like (and other dark secrets)"*
- Dkt. 1-39 Exhibit 37 to Complaint
  - *True and correct screenshots dated 02/26/26 of Google search results for site:ratemyprofessors.com "National Wine School", pgs. 1-7*
  - *True and correct screenshots dated 02/26/26 of ratemyprofessors.com professor pages containing reviews mentioning National Wine School, pgs. 8-88*
- Dkt. 1-40 Exhibit 38 to Complaint
  - *True and correct screenshots dated 02/26/26 of whdh.com article titled "New England Culinary Institute to close after 40 years", pgs. 1-6*
  - *True and correct screenshots dated 02/26/26 of obituary for Mark W. Davis on chiampafuneralhome.com, pgs. 7-10*
  - *True and correct screenshots dated 02/26/26 of ratemyprofessors.com page for Professor Mark Davis, pgs. 11-14*

- Dkt. 1-41 Exhibit 39 to Complaint
  - *True and correct screenshots dated 02/26/26 of Cornellians article on alumni.cornell.edu titled "Like a Fine Vintage, Iconic Wines Class Is Aging Splendidly", pgs. 1-13*
  - *True and correct screenshots dated 02/26/26 of ratemyprofessors.com page for Professor Stephen Mutkoski, pgs. 14-17*
- Dkt. 1-42 Exhibit 40 to Complaint
  - *True and correct screenshots dated 02/19/26 of briefglance.com article titled "Philly Wine School Expands, Bucking Broader Industry Contraction" posted 02/03/26*
- Dkt. 1-43 Exhibit 41 to Complaint
  - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Core Sommelier Course - Spring Semester", pgs. 1-6*
  - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Advanced Sommelier Programs in Philadelphia", pgs. 7-12*
  - *True and correct screenshots dated 02/19/26 of vinology.com webpage titled "Top-Ranked Wine Education: Sommelier Certification in Philly", pgs. 13-20*
- Dkt. 1-44 Exhibit 42 to Complaint
  - *True and correct screenshots of Yelp pages reflecting events posted by, and profile of, "Maeghan K.", pgs. 1-15*
  - *True and correct screenshots dated 02/26/26 of Yelp "Not Recommended Reviews" page for Salon L Manayunk, pgs. 16-19*
  - *True and correct screenshots dated 02/26/26 of Yelp "Not Recommended Reviews" page for Wissahickon Pet Minder, pgs. 20-22*
- Dkt. 1-45 Exhibit 43 to Complaint
  - *True and correct screenshots dated 02/19/26 of Wikipedia page titled "User talk:Maeghankresge", pgs. 1-6*
  - *True and correct screenshots dated 02/19/26 of Wikipedia page titled "Draft:Wine School of Philadelphia", pgs. 7-10*
  - *True and correct screenshots of Wikipedia page for Keith Wallace and its revision history, pgs. 11-15*
- Dkt. 1-46 Exhibit 44 to Complaint
  - *True and correct screenshots dated 02/19/26 of Google search results for "phillywine philadelphia" showing one-star Google review submitted by "maeghan kresge"*

**Dkt. 6 – Plaintiff's Motion for Preliminary Injunction – Filed 02-27-2026**

- Dkt. 6 Motion for Preliminary Injunction
- Dkt. 6-1 [Proposed] Order Granting Preliminary Injunction
- Dkt. 6-2 Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction
- Dkt. 6-3 Exhibit 1
  - *Declaration of Neal Ewing, executed 02/13/26*
- Dkt. 6-4 Exhibit 2 (Part 1)

  - *Declaration of Matt Kirkland (co-owner and operator of PhillyWine), pgs. 2-13 (Exhibit 2 cover sheet, pg. 1)*
  - *Exhibits A et seq. (continuing into Part 2), pgs. 14-144*
- Dkt. 6-5 Exhibit 2 (Part 2)
  - *Declaration of Matt Kirkland, exhibits continued through Exhibit AF, pgs. 1-147*
- Dkt. 6-6 Exhibit 3
  - *Declaration of Noelle Allen (co-owner of PhillyWine), pgs. 2-3 (Exhibit 3 cover sheet, pg. 1); with Exhibit A (Keith Wallace email dated 09/14/2018), pgs. 4-5 —*
- Dkt. 6-7 Exhibit 4 (Part 1)
  - *Declaration of Barry Horwitz (Greenberg Traurig, LLP), pgs. 2-8 (Exhibit 4 cover sheet, pg. 1)*
  - *Exhibits A et seq. (continuing into Parts 2-3), pgs. 9-167*
- Dkt. 6-8 Exhibit 4 (Part 2)
  - *Declaration of Barry Horwitz, exhibits continued, pgs. 1-160*
- Dkt. 6-9 Exhibit 4 (Part 3)
  - *Declaration of Barry Horwitz, exhibits continued, pgs. 1-104*
- Dkt. 6-10 Exhibit 5 (customer and student declarations)
  - *Declaration of Anders Divack, pg. 2*
  - *Declaration of Andrew Dick, pg. 3*
  - *Declaration of Brandon Thomas, pg. 4*
  - *Declaration of Corey Krejcik, pg. 5*
  - *Declaration of David Bayard, pgs. 6-7*
  - *Declaration of Dillon Lerach, pg. 8*
  - *Declaration of Jill Jackson, pgs. 9-15 (with Exhibis A-B)*
  - *Declaration of Kevin Shaffer, pgs. 16-21*
  - *Declaration of Meaghan Frank, pgs. 22-23*
  - *Declaration of Sunita Sheth, pg. 24*
  - *Declaration of Susan Lynham, pgs. 25-26*
  - *Declaration of Todd Bessemer, pgs. 27-29 (with Exhibit A, pgs. 28-29)*
- Dkt. 6-11 Exhibit 6 (third-party declarations)
  - *Declaration of Bob Trimble, pg. 2*
  - *Declaration of Brian Freedman, pg. 3*
  - *Declaration of Daniel Soskin, pgs. 4-16 (with Exhibit A, pgs. 5-10; Exhibit B, pgs. 11-16)*
  - *Declaration of Jack McDavid, pg. 17*
- Dkt. 6-12 Exhibit 7 (third-party declarations)
  - *Declaration of Charles Austermuhl, pgs. 2-3*
  - *Declaration of Eric Miller, pgs. 4-5*
  - *Declaration of Mark Cochard, pgs. 6-7*
  - *Declaration of Marnie Old, pgs. 8-9*
  - *Declaration of Scot Ziskind, pgs. 10-25 (with Exhibit A, pgs. 12-25)*
  - *Declaration of Maria Grilly, pgs. 26-49 (with Exhibits A–E, pgs. 28-49)*
- Dkt. 6-13 Exhibit 8
  - *Declaration of Ian Ballon (Greenberg Traurig, LLP), pgs. 2-3 (Exhibit 8 cover sheet, pg. 1); with exhibits*

**Dkt. 18 – Order Disclosing Prior Relationship with Defendants' Counsel and Setting Recusal Motion Deadline – Filed 03-04-2026**

- Dkt. 18 Order

**Dkt. 25 – Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction – Filed 03-16-2026**

- Dkt. 25 Response in Opposition to Plaintiff's Motion for Preliminary Injunction
- Dkt. 25-1 Exhibit 1
    - *Declaration of Keith Wallace (Defendants' principal), pgs. 2-15 (Exhibit 1 cover sheet, pg. 1)*
    - *Exhibit A, pgs. 16-17*
    - *Exhibit B, pgs. 18-19*
    - *Exhibit C, pgs. 20-26*
    - *Exhibit D, pgs. 27-39*
    - *Exhibit E, pgs. 40-44*
    - *Exhibit F, pgs. 45-47*
    - *Exhibit G, pgs. 48-53*
    - *Exhibit H, pgs. 54-55*
    - *Exhibit I, pgs. 56-78*
    - *Exhibit J, pgs. 79-83*
    - *Exhibit K, pgs. 84-86*
    - *Exhibit L, pgs. 87-89*
    - *Exhibit M, pgs. 90-91*
    - *Exhibit N, pgs. 92-102*
    - *Exhibit O, pgs. 103-108*
    - *Exhibit P, pgs. 109-110*
    - *Exhibit Q, pgs. 111-132*
    - *Exhibit R, pgs. 133-134*
    - *Exhibit S, pgs. 135-136*
    - *Exhibit T, pgs. 137-138*

**Dkt. 27 – Order Scheduling Hearing on Motion for Preliminary Injunction – Filed 03-17-2026**

- Dkt. 27 Order

**Dkt. 29 – Plaintiff's Request for Judicial Notice in Support of its Motion for Preliminary Injunction – Filed 03-25-2026**

- Dkt. 29 Request for Judicial Notice, pgs. 1-5
- Dkt. 29-1 [Proposed] Order Granting Request for Judicial Notice, pg. 1

- Dkt. 29-2 Exhibit 1
  - *USPTO Office Action (Official Letter) for U.S. Trademark Application Serial No. 98869526 (PHILLY WINE SCHOOL), printed from the USPTO website (tsdr.uspto.gov)*
- Dkt. 29-3 Exhibit 2
  - *USPTO Registration Certificate for Reg. No. 8,055,977 (PHILLY WINE SCHOOL, registered 12/09/25), printed from the USPTO website, reflecting the disclaimer of "WINE SCHOOL"*
- Dkt. 29-4 Exhibit 3
  - *USPTO Registration Certificates containing disclaimers of "SCHOOL" apart from the mark (e.g., AAA School of Trucking), collected from the USPTO website*
- Dkt. 29-5 Exhibit 4
  - *USPTO Office Action Official Letters corresponding to each of the Registration Certificates in Exhibit 3, collected from the USPTO website*

**Dkt. 30 – Plaintiff PhillyWine LLC's Reply Brief in Support of its Motion for Preliminary Injunction – Filed 03-25-2026**

- Dkt. 30 Reply Brief in Support of Plaintiff's Motion for Preliminary Injunction
- Dkt. 30-1 Exhibit 9 (Part I)
  - *Second Declaration of Matt Kirkland, pgs. 2-10 (Exhibit 9 cover sheet, pg. 1) — rebuttal to the Wallace Declaration (Dkt. 25-1)*
  - *Exhibits AG et seq.*
- Dkt. 30-2 Exhibit 9 (Part II)
  - *Second Declaration of Matt Kirkland, exhibits continued, pgs. 1-271*
- Dkt. 30-3 Exhibit 9 (Part III)
  - *Second Declaration of Matt Kirkland, exhibits continued, pgs. 1-271*
- Dkt. 30-4 Exhibit 9 (Part IV)
  - *Second Declaration of Matt Kirkland, exhibits continued, pgs. 1-243*
- Dkt. 30-5 Exhibit 10
  - *Declaration of Kelly Daniels, pgs. 2-4 (Exhibit 10 cover sheet, pg. 1)*
- Dkt. 30-6 Exhibit 11, pgs. 1-150

**Dkt. 31 – Defendants' Sur-Reply in Opposition to Plaintiff's Motion for Preliminary Injunction – Filed 04-01-2026**

- Dkt. 31 Sur-Reply in Opposition

**April 3, 2026 – Plaintiff's Letter to Judge Wolson Requesting Oral Argument**

- Letter, pg. 1

**April 6, 2026 – Defendants' Letter to Judge Wolson Opposing Remote Oral Argument**

- Letter, pg. 1

**Dkt. 33 – Memorandum – Filed 05-26-2026**

- Dkt. 33 Memorandum, pgs. 1-36

**Dkt. 34 – Order Denying Motion for Preliminary Injunction – Filed 05-26-2026**

- Dkt. 34 Order, pg. 1

**No. 26-2423**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

**PHILLYWINE LLC,**
**Appellant,**

**v.**

**KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC,**
**ALANA ZERBE and KEITH WALLACE,**
**Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(2:26-cv-01268)

**APPELLEES' SUPPLEMENTAL APPENDIX**

Christopher C. Nana-Sinkam
David A. Rodkey
Stanford B. Ponson
Samantha A. Gill
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
cns@dilworthlaw.com
drodkey@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Appellees*

# TABLE OF CONTENTS

## SUPPELMENTAL APPENDIX

**Document** **Page**

Plaintiff / Appellant's Memorandum of Law in Support of Its Motion for Preliminary Injunction…………………..………………………App. 3807

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PHILLYWINE LLC, a Pennsylvania Limited Liability Company, and

*Plaintiff,*

v.

KSWCO LLC, a Delaware Limited Liability Company, SALKEDS LLC, a Delaware Limited Liability Company, THE NATIONAL WINE SCHOOL LLC, a Pennsylvania Limited Liability Company, ALANA ZERBE, an individual, and KEITH WALLACE, an individual, d/b/a Wine School of Philadelphia

*Defendants.*

Case No. 2:26-cv-01268-JDW

**PLAINTIFF PHILLYWINE LLC'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 1

ARGUMENT .......... 6

- I. PhillyWine's Trademark Infringement Claims Are Likely to Prevail. .......... 6
  - A. PhillyWine Owns Valid and Protectable Trademark Rights. .......... 7
  - B. Defendants' Federal Trademark Registration Is Invalid for Fraud and Is Not Entitled To Any Presumption of Validity .......... 12
  - C. Defendants' Use of "Philly Wine School" is Likely to Cause Confusion. .......... 13
- II. Plaintiff Will Be Irreparably Harmed If Relief Is Not Granted. .......... 16
- III. The Balance of the Hardships Tips Sharply in Favor of PhillyWine. .......... 18
- IV. A Preliminary Injunction Is in the Public Interest. .......... 20

CONCLUSION .......... 21

Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, Plaintiff (PhillyWine) moves for preliminary injunctive relief against Keith Wallace ("Wallace") d/b/a the Wine School of Philadelphia, KSWCO LLC, SALKEDS LLC, The National Wine School LLC and Alana Zerbe (collectively, "Defendants").

**INTRODUCTION**

PhillyWine, a beloved wine school for beginners and experts alike, recently began experiencing malicious attacks intended to disrupt its business that continue (and continue escalating) to this day. Defendants own and operate a school called the Wine School of Philadelphia, which has never been affiliated with PhillyWine. Plaintiff and its predecessor-in-interest have been an integral, respected part of the wine education community in Philadelphia for decades. But suddenly one man, Wallace, has hijacked Plaintiff's valuable trademarks, and made it his mission to destroy Plaintiff's business and take over Plaintiff's identity, including by fraudulently registering the infringing mark PHILLY WINE SCHOOL, and submitting that fraudulent registration to Instagram and other platforms, seeking to erase PhillyWine's existence, and assume control over its trademarks and entire online footprint. In cases like this involving clear trademark infringement, courts consistently issue preliminary injunctions, and the need is enhanced here, as Instagram has set a **June 16, 2026** deadline by which PhillyWine can overcome the suspension of its Instagram account, as explains below. In short, these attacks must end now, and PhillyWine must be allowed to resume its business under normal conditions without further harassment.

**FACTUAL BACKGROUND**

PhillyWine, founded by Neal Ewing ("Ewing"), offers beginner to advanced certifications in wine via online and in-person classes. Ex. 1, Declaration of Ewing (Ewing Decl.), ¶ 3. Ewing ran PhillyWine for over two decades, to help it become an Approved Program Provider (APP) for the Wine & Spirits Education Trust (WSET) in 1999. *Id.*, ¶¶ 3, 7. WSET is a globally recognized organization that creates standardized wine education and certification programs, authorizing businesses to deliver its

courses and exams. *Id.* ¶ 4. Since 2001, PhillyWine has used its website at phillywine.com to promote its wine education business including its WSET courses, and for its email addresses. *Id.* ¶ 7.

In 2022, Ewing retired and transferred/assigned all rights in and to the PhillyWine business to Noelle Allen ("Allen") and Matt Kirkland ("Kirkland"), including all rights and goodwill in the trademarks PHILLYWINE, PHILLYWINE.COM, and "the PHILLY WINE school" (collectively, the "PhillyWine Marks"). *Id.* ¶ 9; Ex. 2, Declaration of Kirkland (Kirkland Decl.), ¶ 9. Since Ewing retired, PhillyWine has remained an esteemed delivery partner for WSET coursework and functions as a trusted pipeline to industry-respected credentials. *Id.* ¶ 12. PhillyWine continues to establish vast connections within the wine industry, and its courses and events regularly incorporate visiting winemakers from other countries such as France, Italy, Spain, Chile, and Argentina, as well as the West Coast of the U.S. *Id.* PhillyWine offers classes both in person and online and was the only APP permitted by WSET to offer "distance learning" courses during the COVID-19 pandemic. *Id.* ¶ 13. Because of this flexibility, students from across the country now participate in PhillyWine's wine education courses. *Id.*

The WSET certification consists of four levels: Beginner, Intermediate, Advanced, and Expert, with the Expert level being a three-year long program. *Id.*, ¶ 14. Wine schools looking to be WSET certified must become an APP which is done on a per-level basis (e.g., a wine school can be certified for only Beginner and Intermediate). *Id.* Apart from wine schools in Boston, New York City and Washington D.C., PhillyWine is the only East Coast wine school that is an APP for all four WSET certification levels. *Id.* Students who completed their first two levels at other wine schools will either travel to or take online courses at PhillyWine to complete their final WSET levels. *Id.* About 1,800-2,400 students globally sit for the WSET Expert certification each year, with approximately 600-800 students passing. *Id.*

In October 2025, PhillyWine began a partnership with Drexel University in Philadelphia to offer wine education courses through Drexel University's Goodwin College of Professional Studies. *Id.* ¶ 17.

Classes are slated to begin in February 2026 (this past week). PhillyWine has also partnered with other universities, including James Madison University in Harrisonburg, Virginia and Northampton Community College in Bethlehem, Pennsylvania, along with its satellite locations. *Id*.

PhillyWine advertises its courses and tasting events on its website and social media accounts, primarily its Instagram account. *Id*. ¶ 18. It has also sent email blasts under the name "PhillyWine" on a monthly or weekly basis with details on its courses and events to its entire distribution list. *Id*.

After almost thirty years of continuous and exclusive use of the PhillyWine Marks, PhillyWine has earned invaluable name-recognition and goodwill throughout the entire oenophile community in and around Philadelphia and beyond, and has become an industry stalwart in assisting students in achieving the well-respected WSET credentials for professional employment, which are trusted by top brands, including Palm Bay International and Starr Restaurant Group. *Id*. ¶ 19. PhillyWine has earned millions of dollars in revenue under its PhillyWine Marks and has spent hundreds of thousands of dollars in advertising and promotion of the PhillyWine Marks and services. *Id*. ¶ 19.

Defendant Wallace owns and has operated the Wine School of Philadelphia since 2001, per the school's website, vinology.com. *Id*. ¶ 20. Wallace had clear, documented knowledge of PhillyWine at least as early as 2019, when WSET's legal counsel sent him a letter demanding he cease certain conduct when comparing PhillyWine and his Wine School of Philadelphia on vinology.com/wset-philly. *Id.* ¶ 21, Ex. G. In response, Wallace updated that webpage to clearly disclaim any affiliation with WSET or PhillyWine, declaring, "**We are Vinology.com *not* Phillywine.com**." *Id*. (emphases in original).[1] Documented evidence further proves Wallace knew of PhillyWine by December 2022. *Id*. ¶ 24, Ex. J. Even without such evidence, Wallace cannot dispute that he knew of PhillyWine: the wine educator community in Philadelphia is small, PhillyWine and the Wine School of Philadelphia coexisted for over

[1] Wallace deleted this webpage in the last two weeks in a conspicuous effort to destroy relevant evidence. *Id*. ¶ 22; Ex. H. But he has now replaced it with a new page that notably lacks the disclaimer in bold above. *Id*. ¶ 23; Ex. I.

two decades, Wallace told Allen that he preemptively registered @PhillyWine on Instagram to antagonize Ewing, who did not use Instagram; and SOMM.us—a supposedly independent site featuring Wallace's own thinly-veiled writings—acknowledges the two companies' coexistence and a supposed "rivalry between" Ewing "and the Wine School of Philadelphia." *See id.*, ¶ 21; Ex. 3, Declaration of Allen ("Allen Decl."), ¶ 11; Ex. 4, Declaration of Barry Horwitz ("Horwitz Decl."), ¶¶ 7-19, Exs. C-M.

In November 2024, despite Wallace knowing of PhillyWine, he filed a trademark application with the United States Patent and Trademark Office ("USPTO") in the name of KSWCO LLC, which he signed as the company's owner. Ex. 2, Kirkland Decl., ¶ 33, Ex. T. Specifically, U.S. Appl. No. 98/869,526 sought to register the mark PHILLY WINE SCHOOL (the "Infringing Philly Wine School Mark") for "Educational services, namely, conducting courses in the fields of food and wine and distribution of training materials in connection therewith" in Class 41. *Id.* The application claims a first use date of August 15, 2016, and the specimen of use is a screenshot from a page of the Wine School of Philadelphia's website vinology.com, dated the day the application was filed. *Id.* ¶ 34, Ex. U. In the application, Wallace declared under oath that to "the best of [his] knowledge and belief, no other persons . . . have the right to use [PHILLY WINE SCHOOL] in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." *Id.*

On July 28, 2025, the USPTO refused to register the mark on the grounds that PHILLY WINE SCHOOL was geographically and merely descriptive. *Id.* ¶ 35, Ex. V. In response, Wallace declared under oath that the mark has acquired distinctiveness (i) "through Applicant's substantially exclusive and continuous use in commerce for at least the five years immediately before the date of this statement," and (ii) "through *nearly two decades of continuous use*, . . . independent press recognition, and

substantially exclusive use." *Id.* ¶ 36, Ex. W (emphasis added). Despite the "two decades" claim (made in August 2025), KWSCO LLC was only established in Delaware on July 9, 2012. *Id.* ¶ 37, Ex. X.

These multiple false statements were accepted by the USPTO, which subsequently issued U.S. Reg. No. 8,055,977 for PHILLY WINE SCHOOL on December 9, 2025 (the "Fraudulent Registration"). *Id.* ¶ 44, Ex. T. Soon after, Wallace embarked on a malicious campaign to destroy PhillyWine, escalating his unlawful actions every few weeks or so. *Id.* ¶¶ 45-49, Exs. Z-AD. First, on or around December 18, 2025, Wallace submitted a complaint to Instagram about PhillyWine's account, @PhillyWineSchool, claiming that the account infringed the Fraudulent Registration. *Id.* ¶ 27, Ex. L. As a result, Instagram suspended the account, causing PhillyWine to lose access to all its Instagram posts and followers. *Id.* Next, on or around December 23, 2025, Wallace submitted an "ownership request" to Google, seeking to ***transfer ownership*** of PhillyWine's Google Business account to Wallace. *Id.* ¶ 28, Ex. M. The account enables PhillyWine to (i) "manage its online presence across Google Search and Maps," and (ii) "display essential information like operating hours, location, contact details and reviews to customers"—which "is crucial for local SEO and boosting visibility." *Id.* ¶ __, Ex. __. Then, on January 5, 2026, Wallace also submitted a complaint to Squarespace, which hosts the PhillyWine.com website, claiming infringement of the Fraudulent Registration and seeking to take down that website. *Id.* ¶ 29, Ex. O. On or around January 21, 2026, Wallace created a series of Facebook events prominently using the wording PHILLY WINE. *Id.* ¶ 45, Ex. Z. Soon after, Wallace continued escalating his attacks on PhillyWine by posting the Infringing Philly Wine School Mark on physical signage outside the Wine School of Philadelphia. *Id.* ¶ 46, Ex. AA. On February 18, 2026, PhillyWine discovered that Wallace self-nominated the Wine School of Philadelphia under its new PHILLY WINE SCHOOL moniker as the Best Vocational School in the Philadelphia Inquirer's Philly Favorites contest and sent emails to thousands in the Philadelphia wine community seeking their votes to secure a win. *Id.* ¶ 48, Ex. AC. And

on February 20, 2026, PhillyWine discovered that Wallace continued to further escalate his attacks by manipulating the structure of his website at vinology.com so that people who search "phillywine" on Google find a top hit for "Philly Wine School" at vinology.com, with the prominent wording "Original Philly Wine" being displayed in the preview of search engine results:




*Id.* ¶ 49, Ex. AD.

**ARGUMENT**

The Court should enter a preliminary injunction requiring Defendants to (i) cease any further use of PHILLYWINE, PHILLY WINE, or PHILLY WINE SCHOOL to in any way promote or reference Defendants and their wine education services; (ii) cease any further use or submission of the Fraudulent Registration to in any way interfere with PhillyWine's business, including by submitting it to any third party as part of a trademark infringement or other complaint; and (iii) withdraw any prior such complaints to any other service providers immediately, including from Instagram, Squarespace, Google, and others.

PhillyWine has substantial evidence to establish the four pre-requisites for preliminary injunctive relief, namely: (1) a reasonable probability of eventual success in the litigation; (2) that Plaintiff will be irreparably harmed if relief is not granted; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) citing *Del. River Port Auth. v. Transamerican Trailer Transport, Inc*., 501 F.2d 917, 919–20 (3d Cir. 1974). The burden is on the movant "to make [the first] two requisite showings," at which point the Court "should balance those four factors." *Id*.

**I. PhillyWine's Trademark Infringement Claims Are Likely to Prevail.**

Courts require a plaintiff seeking a preliminary injunction to show they have a reasonable probability of success. PhillyWine's trademark infringement claims are highly likely to succeed. To prevail on such a claim, a plaintiff must prove: (1) the mark is valid and legally protectable; (2) it owns

the mark; and (3) the defendants' use of the mark is likely to create confusion concerning the origin of goods or services. *E.T. Browne Drug Co. v. Cococare Products, Inc*., 538 F.3d 185, 191 (3d Cir. 2008); *I.M. Wilson, Inc. v. Otvetstvennostyou Grichko*, 500 F. Supp. 3d 380, 412 (3d Cir. 2020); Pennsylvania state law claims require identical elements, but do not require interstate commerce *Id*. at 413.

**A. PhillyWine Owns Valid and Protectable Trademark Rights.**

Plaintiff's PhillyWine Marks are valid and protectable. A party claiming common law protection in a mark must establish both that it has used the mark prior to any federal registration of that mark and that such use has continued to the present. *Id*. at 404. The ownership element for unregistered marks requires proof that the claimant (1) was first to adopt the mark in commerce, (2) has continuously used the mark, and (3) the mark is inherently distinctive or has acquired secondary meaning. *Id*. at 403.

PhillyWine has been continuously and exclusively using the PhillyWine Marks since at least as early as 1999 (if not earlier), which clearly predates the December 9, 2025, issuance of the Fraudulent Registration, as well as its 2024 filing date. *See* Ex. 1, Ewing Decl., ¶¶ 7; 9; Ex. 2, Kirkland Decl., ¶¶ 9; 21; 44. PhillyWine thus satisfies the first two elements to establish common law protection of a mark.

Even if it were found that "PhillyWine" was at first a descriptive term, PhillyWine can establish protectable rights in the PHILLYWINE Marks by showing that they have acquired secondary meaning "at the time and place that the defendant began use of the mark." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc*., 214 F.3d 432, 438 (3d Cir. 2000) (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc*., 589 F.2d 1225, 1231 (3d Cir. 1978)). Secondary meaning exists when the consuming public understands the mark "to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Id*. The Third Circuit considers 11 non-exclusive factors to evaluate secondary meaning but recognizes there is no consensus on the elements. *Ford Motor Co. v. Summit Motor Prods., Inc*., 930 F.2d 277, 292 (3d Cir. 1991). The factors are: (1) the extent of sales and

advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion. *Id.*

Here, the length and manner of use of the PhillyWine Marks weighs decidedly in PhillyWine's favor. As evidenced by Ewing and Kirkland, PhillyWine has been continuously and exclusively using the PhillyWine Marks as PhillyWine's house mark and brand for at least 27 consecutive years. Ex. 1, Ewing Decl., ¶¶ 7; 9; Ex. 2, Kirkland Decl., ¶¶ 9; 21; 44.; *see Am. Diabetes Ass'n v. Nat'l Diabetes Ass'n*, 533 F. Supp. 16, 19 (E.D. Pa. 1981) (granting preliminary injunction, finding plaintiffs would be able to show secondary meaning in the mark AMERICAN DIABETES ASSOCIATION with forty years of use and history of advertising and promoting the mark and services). The WSET certification consists of four levels: Beginner, Intermediate, Advanced, and Expert, with the latter being a three-year long program. Ex. 2, Kirkland Decl., ¶14. Wine schools looking to be WSET certified must become an APP, which is done on a per-level basis (a wine school can be certified for only Beginner and Intermediate). *Id.* PhillyWine is the only wine school within 30 miles of Philadelphia offering WSET certification, and one of only four wine schools on the East Coast that is an APP for all four WSET certification levels (the others being in Boston, New York City and Washington D.C.). *Id.* Students across the country who have completed their first two levels at other wine schools can either travel or take online courses at PhillyWine to complete their final levels. *Id.* Approximately 1,800-2,400 students globally sit for the Expert certification each year, with about 600-800 students passing. *Id.* Additionally, PhillyWine has partnerships with several colleges to offer wine courses, including Drexel University and James Madison University, and Northampton Community College. *Id.* ¶ 17. The result of all this activity is that the PhillyWine Marks have become known as an exclusive source identifier for PhillyWine. *Id.* ¶ 19; *see Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 333 (2d Cir. 1983) ("Here there was proof of

association of the 'General Lee' toy car with the 'Dukes of Hazzard' television series. Nor is there any doubt that consumers wanted the toy in part because they (or their children) identified the toy with the television series. This is sufficient even though Warner is not a manufacturer of toy cars [and] there was no showing that consumers believed that the toy cars marketed by Gay Toys were sponsored or authorized by Warner"); *see also Genesee Brewing Co. v. Stroh Brewing Co*., 124 F.3d 137, 143 n.4 (2d Cir. 1997) ("The crucial question in a case involving secondary meaning always is whether the public is moved in any degree to buy an article because of its source."). Indeed, one student specifically emailed PhillyWine because they felt Defendants' wine school was lacking. Ex. 2, Kirkland Decl., ¶ 19, Ex. D.

The size of PhillyWine, its sales, and its number of customers require a contextual analysis rather than raw numbers, and such evidence must be evaluated within competitive market contexts. 2 McCarthy on Trademarks and Unfair Competition § 15:49 (5th ed.). As discussed above, the PhillyWine Marks are exclusively used in the narrow field of wine education services. Since PhillyWine first began operating in 1999, and using the same PhillyWine.com website for 25 years, it has earned over four million dollars in sales and spent many hundreds of thousands of dollars in advertising, including on Instagram, to promote its services under the PhillyWine Marks. Ex. 1, Ewing Decl., ¶ 7; Ex. 2, Kirkland Decl., ¶¶ 19.[2]

The Third Circuit has characterized copying as a "vitally important factor" that can be inferred from the close resemblance of the mark at issue, here, the Infringing Philly Wine School Mark and the PhillyWine Marks (*see Ford Motor Co.*, 930 F.2d at 297) as well as "persuasive evidence of secondary meaning." *See Ideal Toy Corp. v. Plawner Toy Mfg. Corp*., 685 F.2d 78, 82 (3d Cir. 1982). A rational competitor would only copy a mark that had achieved consumer recognition and commercial value,

[2] *See Student Painters-Michigan LLC v. Student Painters Inc*., No. 2:22-cv-00855, 2022 U.S. Dist. LEXIS 166257 at *13 (W.D. Pa. Sep. 15, 2022) (granting injunctive relief and holding plaintiff "met its burden of showing secondary meaning" through its "continual use of the STUDENT PAINTERS mark in multiple states," its having "serviced thousands of customers," "invested substantial sums in marketing and advertising through its website, social media, and other platforms" and "earned millions of dollars" in revenues, and because it "was recognized in testimonials from" those involved in or recipients of its services).

otherwise there would be no point or profit. While intentional copying is not a substitute for secondary meaning, PhillyWine has sufficiently met its burden to prove that the PhillyWine Marks have acquired secondary meaning. *Id.* (noting, beyond an admission of intentional copying, plaintiff also provided substantial evidence of almost two million dollars in advertising and over five million unit sales). Without question, Defendants intentionally copied the PhillyWine Marks in their Infringing Philly Wine School Mark, which is nearly identical to the PhillyWine Marks. *See also* Ex. 3, Allen Decl., ¶ 11.

Customer testimony represents one of the eleven recognized factors for proving secondary meaning. As explained in the *McCarthy* treatise, to establish secondary meaning, it is necessary to show that a substantial segment or appreciable number of the relevant group of consumers made the requisite association between symbol and source. Courts reject isolated customer testimonials as insufficient. 2 McCarthy on Trademarks and Unfair Competition § 15:30 (5th ed.). Customer evidence must be relevant to the time period when secondary meaning is claimed. A plaintiff must establish secondary meaning "at the time and place that the defendant began use of the mark." *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d at 438. Here, PhillyWine has attached ***twenty-four*** declarations establishing that numerous consumers of wine education and prominent members of the wine industry know and recognize the mark PhillyWine and associate it exclusively with Ewing's business and/or his successors Kirkland and Allen. *See* Exs. 5, 6 and 7; *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 379-80 (5th Cir. 2024) (affirming finding of secondary meaning based on "out-of-court statements made by consumers who associate 'Appliance Liquidation Outlet'" with plaintiff); *Duncan McIntosh Co. Inc. v. Newport Dunes Marina LLC*, 324 F. Supp. 2d 1078, 1084-85 (C.D. Cal. 2004), aff'd, 120 F. App'x 119 (9th Cir. 2005) (finding secondary meaning and granting a preliminary injunction where declarations of third-party "exhibitors" "and others in the industry" showed "the minds of the relevant public associate the Newport Boat Show with plaintiff").

Finally, while proof of actual confusion is not required for a preliminary injunction, it is strong evidence of likelihood of confusion, and this factor weighs in favor of PhillyWine. *See Ford Motor Co.*, 930 F.2d at 293. The Third Circuit's approach to actual confusion evidence in secondary meaning determinations is grounded in the foundational principle established in *Interpace Corp. v. Lapp, Inc.*, which held that "the best evidence that a mark has acquired secondary meaning is proof of actual confusion." *See Holiday Inns, Inc. v. Trump*, 617 F. Supp. 1443, 1468 (D.N.J. 1985) (citing 721 F.2d 460 (3d Cir. 1983)). The court in *Interpace Corp.* reasoned that "secondary meaning exists when consumers seeing a trademark assume that the product it labels came from a particular source. If in fact the product did not come from that source, then there has been buyer confusion." *Id*. at 462. Here, there have been at least two instances of actual confusion resulting from Defendants' use of the Infringing Philly Wine School Mark. For example, on December 2, 2025, PhillyWine received an email from a PhillyWine student in which the student informed PhillyWine that they had seen an event in a local weekly email blast advertising "Core Sommelier Court (Winter Semester) Philly Wine School Philadelphia, Pennsylvania" and stated, "I thought it was your school which surprised me. When I read more info . . . I realized this was for the other school, the Wine School of Philadelphia." Ex. 2, Kirkland Decl., ¶ 52, Ex. AE. Moreover, because Defendants continue to escalate their improper conduct, the likelihood of additional instances of actual confusion increases significantly. Most recently, Defendants sent a blast email to numerous recipients saying, "We've been nominated as one of the region's best vocational schools in the Inquirer's Philly Favorites awards!" and encouraging them to vote for "Philly Wine School." *See* Ex. 2, Kirkland Decl., ¶ 48, Ex. AC. Defendants are clearly conflating PhillyWine and the Wine School of Philadelphia by referring to the latter as "Philly Wine School," with the intent to destroy PhillyWine, and its separation from Defendants, to divert PhillyWine's customer base to Defendants. Thus, the PhillyWine Marks have secondary meaning and are protectable.

### B. Defendants' Federal Trademark Registration Is Invalid for Fraud and Is Not Entitled To Any Presumption of Validity

A federal trademark registration is presumed valid, and constitutes *prima facie* evidence of the mark's validity, and of the registrant's ownership and exclusive right to use the mark in commerce for the services listed in the registration. 15 U.S.C. § 1115(a). But those presumptions are rebutted when the mark is procured through fraud. *See Orient Exp. Trading Co. v. Federated Dept. Stores,* 842 F. 2d 650, 653 (2d Cir. 1988) (quoting § 1115(a) to note all registered marks are subject to "any legal or equitable defense or defect," and affirming the lower court's cancellation of registrations for fraud, where the "dates of first use . . . were 'greatly exaggerated'"); *Covertech Fabricating, Inc. v. TVM Building Products, Inc*., 855 F.3d 163 (2017) (upholding cancellation where the defendant falsely attested that "'he believed no other person, firm, corporation, or association ha[d] the right to use the mark,' a statement he made under penalty of perjury"). Here, the presumption of validity afforded to the Fraudulent Registration must likewise be disregarded based on its procurement by Defendants through fraud.

As discussed in the Complaint, there is substantial evidence that Wallace made multiple material misrepresentations to the USPTO, including but not limited to: (1) declaring under penalty of perjury that (a) the Infringing Philly Wine School Mark was first used in commerce as of August 15, 2016 (Ex. 2, Kirkland Decl., ¶ 34, Ex. T); (b) he had been using the Infringing Philly Wine School Mark substantially exclusively and continuously "for at least the five years immediately before the date of this statement" (*Id.* ¶ 36, Ex. W); (c) he had "nearly two decades of continuous use" (*Id.*)—when there is no evidence Defendants ever used the Infringing Philly Wine School Mark before November 23, 2024 (*Id.* ¶ 38, Ex. Y); and (d) "to the best of [his] knowledge" that no other person had a right to use the PHILLY WINE SCHOOL mark either in "identical form or in such near resemblance as to be likely, when used on or in connection with the services of such other persons, to cause confusion or mistake" (*Id.* ¶ 34, Ex. T)—when in fact he has been aware of PhillyWine and the PhillyWine Marks for years (*Id.* ¶ 21, Ex. G); (2)

knowingly submitting evidence in which third parties referred ***to PhillyWine*** as evidence of alleged references to ***Wallace's supposed "Philly Wine School"*** including (a) submitting an online bio of wine educator Susan Lynham who is an instructor for PhillyWine who wrote that she taught classes for "the Philly Wine School," to falsely claim that she worked for Wallace when she never did (*Id.* ¶ 30, Ex. R);[3] (b) submitting a Reddit post seeking advice about whether the poster should take a "WSET II or III Course" "at the Philly wine school," which can only refer to PhillyWine, since Wallace's school does ***not*** teach WSET curriculums (Ex. 2, Kirkland Decl., ¶ 42, Ex. I); and (3) submitting articles from "independent third-party press," i.e., SOMM.us, which in reality were authored by Wallace himself. *See also* Dkt. 1, ¶¶ 49, 82-86, Exs. 29-34; Horwitz Decl., ¶¶ 7-19, Exs. C-M. In sum, clear and convincing evidence shows that the Fraudulent Registration was procured through fraud, and thus the presumption of validity and ownership typically afforded to federal registrations should not be granted here.

**C. Defendants' Use of "Philly Wine School" is Likely to Cause Confusion.**

The Third Circuit's *Lapp* factors provide the analytical framework for determining likelihood of confusion. S*ee A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 211 (3d Cir. 2000); *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010). The ten factors examine: (1) degree of similarity between marks; (2) strength of the owner's mark; (3) price of goods and consumer care expected; (4) length of defendant's use without confusion; (5) defendant's intent; (6) evidence of actual confusion; (7) marketing channels and advertising media; (8) extent of overlapping target customers; (9) relationship of goods in consumers' minds; and (10) other facts suggesting expected product expansion. *See id.*; *A & H Sportswear, Inc*. 237 F.3d at 215.

The first factor, "similarity of the marks," eighth factor "extent of overlapping target customers,"

---

[3] *See* Ex. 5, Declaration of Susan Lynham, ¶ 12. Wallace's reliance on Susan Lynham's online bio as purported evidence of a reference to his wine school is particularly shameless given that, soon after the Fraudulent Registration issued, he submitted it to Squarespace complaining that Susan Lynham's bio on PhillyWine.com, which featured the exact same "Philly Wine School" wording, somehow served as evidence that his purported rights were being infringed. Ex. 2, Kirkland Decl., ¶¶ 31, Ex. R.

and ninth factor "relationship of goods in consumers' minds," unequivocally weigh in PhillyWine's favor. *See Ford Motor Co.*, 930 F.2d at 293 ("We recently held that "if the overall impression created by marks is essentially the same, 'it is very probable that the marks are confusingly similar'") (quoting 2 McCarthy, Trademarks and Unfair Competition at § 23:7). *First*, Defendants' Infringing Philly Wine School Mark is nearly identical to Plaintiff's PHILLY WINE, PHILLYWINE.COM and "the PHILLY WINE school"; Defendants' mere addition of the *generic* term SCHOOL to Plaintiff's PHILLYWINE and PHILLYWINE.COM marks does nothing to distinguish the marks given that the dominant feature of all of these marks is clearly "PHILLY WINE." See *United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Tang Soo Karate Sch., Inc.*, No. 3:12-CV-00669, 2015 U.S. Dist. LEXIS 107955, at *56 (M.D. Pa. Aug. 17, 2015) ("When the dominant portions of the two marks are the same, confusion is likely . . . Thus, the fact that the dominant portions of both Plaintiff's and Defendants' business names relies on Plaintiff's trademarked term 'Moo Duk Kwan' supports a finding of a likelihood of confusion"). *Second*, Defendants' infringing mark is used on the exact same category of services as the PhillyWine Marks, namely, wine school/education services, and targeting the exact same type of customers, namely, wine students or individuals with a passion for wine and wine education. As such, PhillyWine's services offered in connection with the PhillyWine Marks directly compete with Defendants', thus making them closely related in the minds of consumers. See *United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc.*, 2015 U.S. Dist. LEXIS 107955, at *57. Indeed, as discussed above, PhillyWine has identified more than one instance of actual confusion. Ex. 2, Kirkland Decl., ¶¶ 52-53, Exs. AE-AF; *see Am. Fid. & Liberty Ins. Co.,* 2000 U.S. Dist. LEXIS 13863, at *19, *24-*26 (finding AMERICAN FIDELITY GROUP and AMERICAN FIDELITY & LIBERTY INSURANCE to be "virtually identical" and enjoining use of AMERICAN FIDELITY & LIBERTY where there were actual instances of confusion).

As discussed above, and as shown through the *numerous* third-party declarations submitted

herewith, the PhillyWine Marks have achieved substantial consumer recognition and goodwill, and thus have not only acquired distinctiveness, but also have commercial strength. *See* Exs. 5, 6 and 7. Thus, the second factor heavily favors PhillyWine. The same is true for the seventh factor, as both parties promote heavily via Instagram and other online advertising methods. Ex. 2, Kirkland Decl., ¶¶ 18-19.

The fourth factor, "the length of time defendant has used the mark without evidence of actual confusion arising" and sixth factor "evidence of actual confusion" also weigh strongly in PhillyWine's favor. Due to the overlap, these factors are often analyzed together. *See Aljess LLC v. Tun Tavern Legacy Found. Inc.*, No. 24-2388, 2024 LX 81328, at *15 (E.D. Pa. Dec. 4, 2024). While Defendants claim they first began using the Infringing Philly Wine School Mark on August 15, 2016, as noted above and in the Complaint (Dkt. 1), that date is false, and the available evidence shows that in fact, Defendants did not use the Infringing Philly Wine School Mark earlier than November 23, 2024, and did not begin using that mark to escalate its attacks on PhillyWine until December 18, 2025. *See* Ex. 2, Kirkland Decl., ¶¶ 38; 27 Exs. Y, L. Thus, the PhillyWine Marks and Defendants' Infringing Philly Wine School Mark have only knowingly coexisted for less than three months. In just that short period of time, per the sixth factor, there have been two documented instances of actual confusion, and unless Defendants' conduct is stopped, there will certainly be more. The rarity of such evidence makes even a few incidents "highly probative of the likelihood of confusion." *S&P Glob. Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 461 (D. Del. 2022) (finding three instances of initial interest confusion sufficient to make this factor favor the plaintiff) (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 729 (3d Cir. 2004)).

The fifth factor, "intent" strongly favors PhillyWine. Intentional infringement can be inferred because Defendants clearly knew of PhillyWine and its wine education services. *Id.* ¶¶ 21; 24 Ex. G, J. And Wallace's own statements and actions reflect that intent. Ex. 3, Allen Decl., ¶ 11.

In short, PhillyWine is likely to succeed on the merits because it has shown that it owns the valid

and protectable Philly Wine Marks, that the presumption of validity should not be given to the Infringing Philly Wine School Mark, and that it is highly likely to succeed in showing likelihood of confusion,.

**II. Plaintiff Will Be Irreparably Harmed If Relief Is Not Granted.**

The irreparable harm requirement demands that movants demonstrate harm that "cannot be redressed by a legal or an equitable remedy following a trial" and show "the preliminary injunction must be the only way of protecting the plaintiff from harm." *See GlaxoSmithKline LLC v. Boehringer Ingelheim Pharmaceuticals, Inc*., 484 F.Supp.3d 207 (2020).

For a plaintiff seeking a preliminary injunction, the Trademark Modernization Act of 2020 introduced a rebuttable presumption of irreparable harm once it establishes a likelihood of success on the merits. The Third Circuit has also established a three-step framework for applying the above-referenced rebuttable presumption, the first of which is whether the plaintiff's trademark infringement claim is likely to succeed. *Nichino America, Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 183-84 (3d Cir. 2022). Once that is met, step two shifts the burden of production to the defendant to introduce evidence sufficient for a reasonable factfinder to conclude that consumer confusion is unlikely to cause irreparable harm. *Id*. As PhillyWine has established a substantial likelihood of success on its trademark infringement claims, and because the purpose of Defendants' actions ***is*** to cause confusion, irreparable harm should be presumed.

Even with no presumption, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc*., 143 F.3d 800, 805 (3d Cir. 1998). Lack of control over one's mark "creates the *potential* for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990). Thus, "trademark infringement amounts to irreparable injury as a matter of law." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992); *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*,

212 F.3d 157, 169 (3d Cir. 2000) ("potential damage to . . . reputation or goodwill or likely confusion between parties' marks" is irreparable injury). "Once the likelihood of confusion caused by trademark infringement [is proven], the inescapable conclusion is that there was also irreparable injury." *Pappan*, 143 F.3d at 805. Moreover, the "goal[] of the preliminary injunction analysis [of] maintaining the status quo, defined as the last peaceable, noncontested status of the parties." *Opticians*, 920 F.2d at 197.

There is no question that PhillyWine is facing an existential threat due to Defendants' onslaught of attacks, including but not limited to (1) filing a fraudulent complaint with Instagram to successfully shut down PhillyWine's Instagram account, which will be permanently disabled if Wallace is not ordered to withdraw that complaint before June 16, 2026; (2) submitting a takedown notice to the hosting provider for PhillyWine's website (Squarespace); and (3) attempting to take over PhillyWine's Google Business Profile for PhillyWine, which would allow Wallace to control how PhillyWine appears on Google Maps and in Google Search results to e.g., show its operating hours, location, contact details, reviews and other information displayed on Google, and to control or remove our ads and ad spend, along with our search engine optimization, keywords, negative keywords, and ad history. *See* Ex. 2, Kirkland Decl., ¶¶ 27-28; 30, Exs. L-M, Q. As modern business is almost entirely conducted on the internet, and with over 80% of internet searches in the U.S. being conducted via Google, PhillyWine's identity on Google is its identity everywhere. Clearly, Wallace's actions are predicated towards an all-out effort to completely and permanently cripple PhillyWine's ability to conduct business and communicate with its consumers ***entirely***. *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3d Cir. 2014) (affirming district court's granting of a preliminary injunction where plaintiff showed a likelihood of irreparable harm to its brand reputation and goodwill supported by the literally false comparative advertising claims identifying the competitor by name, the competitive relationship between the parties, and testimony that the harm to brand reputation and goodwill was impossible to quantify).

Plaintiff acknowledges that its request to order Defendants to withdraw their Instagram complaint seeks mandatory and not prohibitory relief, and that Third Circuit law requires it "meet a higher standard of showing irreparable harm."[4] Even so, PhillyWine meets that standard: unless Defendants' complaint is withdrawn by the strict deadline set by Instagram, PhillyWine will irreparably harmed by the deletion and loss of its account, posts and followers, and its main method of advertising.

Moreover, PhillyWine has acted reasonably and expeditiously to resolve these issues, to no avail. It first retained counsel in late December and sought to obtain Defendants' voluntary compliance. Ex. 8, Declaration of Ian Ballon. ¶ 3, Ex. A. At first, PhillyWine received some promising assurances about resolving this dispute short of Court intervention. Specifically, counsel for both parties held an initial call on January 13, 2026, in which they discussed exchanging letters outlining their positions. *Id.* ¶¶ 4-5. Wallace's conduct continued to escalate as outlined above, and PhillyWine's counsel sent a demand letter explaining the bases for its claims of infringement and fraud on the USPTO on January 28, 2026. *Id.* ¶ 7, Ex. D. Counsel for Wallace responded on February 2, 2026 refusing any reasonable resolution (*id.* ¶ 8, Ex. E), and Wallace has continued further escalating his unlawful conduct, as noted above. Thus, by early February, it was clear that injunctive relief to maintain the status quo was the only available path to resolution. *Id.* ¶ 9.

**III. The Balance of the Hardships Tips Sharply in Favor of PhillyWine.**

Courts must ensure that an injunction would not harm the alleged infringer more than denying it would harm the trademark owner. *Opticians*, 920 F.2d at 197. The Third Circuit places significant weight on whether the alleged infringer acted intentionally or in bad faith. *Id.* (emphasizing that when defendants "openly, intentionally, and illegally appropriated" trademark rights despite warnings, they "can hardly claim to be harmed" as they "brought any and all difficulties occasioned by the issuance of an injunction

[4] *See Stein v. Cortes*, 223 F. Supp. 3d 423, 431 (E.D. Pa. 2016). PhillyWine notably is only asking to preserve the status quo as it existed on December 17, before Defendants submitted that complaint to Instagram based on the Fraudulent Registration.

upon" themselves); *see also Kos*, 369 F.3d at 728 (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 290 F.3d 578, 596 (3d Cir. 2002).) The Third Circuit also employs a sliding scale approach where stronger likelihood of success on the merits allows for a weaker showing on the balance of hardships. *Kos*, 369 F.3d at 729 (3d Cir. 2004). Further, Indeed, a different rule would allow "a knowing infringer [that] construct[s] its business around its infringement" to avoid an injunction by claiming it would have a "devastating effect" on that business, "a result we cannot condone." *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir. 1983).

Defendants have unquestionably brought this suit on themselves. Defendants are intentionally copying the PhillyWine Marks and using them to wreak havoc on PhillyWine's business and reputation. Moreover, Defendants have been warned repeatedly by PhillyWine's undersigned counsel that Defendants' actions are improper and illegal, and that PhillyWine would take further action if Defendants' conduct did not cease. But since being warned, Defendants' conduct has only escalated.

Moreover, Defendants can easily remedy this infringement without disrupting their business, as they can continue operating under their registered business name **The Wine School of Philadelphia**, ***which is how they are known in the Philadelphia wine community***. *See Opticians*, 920 F.2d at 197 ("Therefore, while removing the marks from promotional material—a relatively inexpensive process—the IOA can continue the unhindered sale of its product"); *Bill Blass, Ltd. v. SAZ Corp.,* 751 F.2d 152, 156 (3d Cir. 1984) (finding the defendant was not "irreparably harmed" because it could remove the label from its goods and then sell them). Defendants have ***never*** been known to consumers as "Philly Wine School." *See* Ex. 7, Declaration of Charles Austermuhl, ¶ 8.[5] Thus, Defendants have no legal basis to continue the infringing conduct, so an injunction only prevents them from persisting in unlawful conduct. See *United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc.*, 2015 U.S. Dist. LEXIS 107955, at *82.

[5] *See also* all other declarations in Ex. 7.

Simply put, if the Court enjoins Defendants from using the Infringing Philly Wine School Mark, they can still run a wine school and earn revenue because Defendants did so for almost ***twenty-five years*** under a different brand and trade name. The same cannot be said for PhillyWine, which will have entirely lost its business identity if Defendants are permitted to continue their attacks on PhillyWine. Defendants cannot be allowed to continue to compete unfairly by using the Infringing Philly Wine School Mark to intentionally create confusion and harass and disrupt PhillyWine's business and online operations.

## IV. A Preliminary Injunction Is In The Public Interest.

The public interest often favors injunctive relief when a plaintiff has shown both likelihood of success and irreparable harm. *See Johnson v. Wetzel*, 209 F.Supp.3d 766 (2016); *see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Moreover, in "a trademark case, the public interest is most often a synonym for the right of the public not to be deceived or confused.' Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." S*&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir. 1992).

This factor weighs strongly in PhillyWine's favor. Wallace has exhibited an unequivocal pattern of conduct, for decades, in which he (1) misappropriated the customers or goodwill of others;[6] (2) falsely claimed to have credentials he never earned;[7] and (3) weaponized internet anonymity to fraudulently promote himself and his business, including by (a) fabricating "affiliations" that do not exist between his business and those of others;[8] and (b) writing vanity pieces about himself and/or his businesses under the guise of people who do not exist[9]—all for the sole purpose of benefitting Wallace, to the detriment of others. Permitting Wallace to continue such fraudulent behavior that deceives consumers clearly is not in the public interest. This pattern of conduct cannot continue. It must end here and now.

---

[6] *See* Ex. 7, Declaration of Eric Miller ("Miller Decl."), ¶ 9; Declaration of Scot Ziskind ("Ziskind Decl."), ¶¶ 9-14, Ex. A.
[7] *See* Ex. 7, Declarations of Marnie Old, ¶ 8, Mark Cochard, ¶ 9; Miller Decl., ¶ 10; Ex. 4, Horwitz Decl. ¶¶ 3-6, Exs. A-B.
[8] *See* Ex. 7, Ziskind Decl., ¶¶ 9-14, Ex. A; Ex. 4, Horwitz Decl., ¶¶ 20-42, 45-46, 52-56 and exhibits cited therein.
[9] *See* Ex. 4, Horwitz Decl., ¶¶ 7-56 and exhibits cited therein.

## CONCLUSION

PhillyWine has shown a likelihood of success on the merits and the irreparable harm it will suffer if Defendants are not enjoined by this Court. As such, the Court should issue the requested injunction as reflected in PhillyWine's proposed Order.

Respectfully submitted,

Dated: February 27, 2026

*/s/ Brian T. Feeney*

Brian T. Feeney, Esq.
GREENBERG TRAURIG, LLP
1717 Arch Street
Suite 400
Philadelphia, PA 19103
brian.feeney@gtlaw.com

Ian C. Ballon, Esq.
*Pro Hac Vice* Application to be Filed
GREENBERG TRAURIG, LLP
1900 University Avenue
5th Floor
East Palo Alto, CA 94303
ballon@gtlaw.com

Barry Horwitz, Esq.
*Pro Hac Vice* Application to be Filed
Marc Trachtenberg, Esq.
*Pro Hac Vice* Application to be Filed
Molly Carr, Esq.
*Pro Hac Vice* Application to be Filed
GREENBERG TRAURIG, LLP
360 North Green Street
Suite 1300
Chicago, IL 60607
barry.horwitz@gtlaw.com
trachtenbergm@gtlaw.com
carrm@gtlaw.com

ATTORNEYS FOR PLAINTIFF
PHILLYWINE LLC