**No. 26-2423**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

**PHILLYWINE LLC,**
**Appellant,**

**v.**

**KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC,**
**ALANA ZERBE and KEITH WALLACE,**
**Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(2:26-cv-01268)

# BRIEF OF APPELLEES KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC, ALANA ZERBE and KEITH WALLACE

Christopher C. Nana-Sinkam
David A. Rodkey
Stanford B. Ponson
Samantha A. Gill
DILWORTH PAXSON LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
cns@dilworthlaw.com
drodkey@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Appellate Rule 26.1.0 and Federal Rule of Appellate Procedure 26.1, counsel for Appellees certifies the following:

1. The full name of every party represented by the undersigned counsel is: KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC, ALANA ZERBE, and KEITH WALLACE.

2. No other real parties in interest are represented by the undersigned.

3. There is no publicly-held company owning 10% or more of KSWCO LLC, SALKEDS LLC, or THE NATIONAL WINE SCHOOL LLC stock.

4. The names of all law firms and the partners or associates that appeared for the party now represented by the undersigned in the trial court or agency, or are expected to appear in this Court, are: Dilworth Paxson LLP: Christopher C. Nana-Sinkam, David A. Rodkey, Stanford B. Ponson, Samantha A. Gill

Dated: October 27, 2026 *<u>/s/ David A. Rodkey</u>*

**TABLE OF CONTENTS**

COUNTERSTATEMENT OF ISSUES FOR REVIEW ........................................1
COUNTERSTATEMENT OF THE CASE ..........................................................1
SUMMARY OF ARGUMENT .......................................................................15
ARGUMENT ................................................................................................17
I. COUNTERSTATEMENT OF THE STANDARD OF REVIEW ............17
II. THE DISTRICT COURT DECIDED THE CASE APPELLANT PRESENTED ..........................................................................................18
III. APPELLANT CANNOT RECAST FINDINGS OF FACT AS LEGAL ERROR ..................................................................................................21
A. The Challenged Rulings Are Findings of Fact ...........................22
B. Appellant Did Not Carry Its Burden Below ...............................27
1. The Claimed Assignment Is Unproven...............................29
2. No Clear and Convincing Evidence of Fraud.....................31
IV. THE DISTRICT COURT PROPERLY DENIED THE PRELIMINARY INJUNCTION ..........................................................................................33
A. Appellant Showed No Likelihood of Success ............................33
1. Appellant Owns No Protectable Mark................................34
a. WSOP Used “Philly Wine School” First .........................34
b. PhillyWine Did Not Continuously Use “PhillyWine” ....36
c. The Claimed Marks Lack Secondary Meaning ...............38
2. No Likelihood of Confusion ...............................................43
B. Irreparable Harm Cannot Overcome the Failure on the Merits ..46
C. The Equities Favor WSOP .........................................................48
D. The Public Interest Does Not Support an Injunction ..................51
CONCLUSION ............................................................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) ....................44, 45

*A.J. Canfield Co. v. Honickman*,
808 F.2d 291 (3d Cir. 1986) ....................50

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4 (2d Cir. 1976) ....................50

*Am. Home Prods. Corp. v. Barr Lab'ys, Inc.*,
834 F.2d 368 (3d Cir. 1987) ....................18, 23, 43

*Anderson v. City of Bessemer City*,
470 U.S. 564 (1985)....................17, 18, 36, 42

*Arrowpoint Capital Corp. v. Arrowpoint Asset Management, LLC*,
793 F.3d 313 (3d Cir. 2015) ....................27, 28, 41

*Bimbo Bakeries USA, Inc. v. Botticella*,
613 F.3d 102 (3d Cir. 2010) ....................22

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009) ....................31, 32

*Cobra Enters., LLC v. All Phase Servs., Inc.*,
2023 WL 3916276 (D.N.J. June 9, 2023)....................29

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016) ....................21, 30, 31

*Def. Distributed v. Att'y Gen. of N.J.*,
972 F.3d 193 (3d Cir. 2020) ....................47

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ....................47

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
442 F.3d 812 (3d Cir. 2006) ........................................................................29, 30

*Douglas v. Osteen*,
317 F. App'x 97 (3d Cir. 2009) ........................................................................34

*Dranoff-Perlstein Assocs. v. Sklar*,
967 F.2d 852 (3d Cir. 1992) ........................................................................22, 38, 43

*E.T. Browne Drug Co. v. Cococare Prods., Inc.*,
538 F.3d 185 (3d Cir. 2008) ........................................................................33

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
765 F.3d 205 (3d Cir. 2014) ........................................................................18

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
930 F.2d 277 (3d Cir. 1991) ........................................................................38

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
774 F.3d 192 (3d Cir. 2014) ........................................................................18, 22

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
903 F.2d 186 (3d Cir. 1990) ........................................................................22

*Interpace Corp. v. Lapp, Inc.*,
721 F.2d 460 (3d Cir. 1983) ........................................................................*passim*

*Issa v. Sch. Dist. of Lancaster*,
847 F.3d 121 (3d Cir. 2017) ........................................................................18

*Kos Pharms., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004) ........................................................................17, 25

*Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*,
26 F.3d 375 (3d Cir. 1994) ........................................................................21

*Lesende v. Borrero*,
752 F.3d 324 (3d Cir. 2014) ........................................................................19

*Nichino Am., Inc. v. Valent U.S.A. LLC*,
44 F.4th 180 (3d Cir. 2022) ........................................................................46

*NutraSweet Co. v. Vit-Mar Enters., Inc.*,
176 F.3d 151 (3d Cir. 1999) ....................46

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
920 F.2d 187 (3d Cir. 1990) ....................48

*Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc.*,
674 F. Supp. 3d 132 (E.D. Pa. 2023)....................31

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017) ....................17, 18, 33, 46

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)....................19

*Wash. Speakers Bureau, Inc. v. Leading Auths., Inc.*,
33 F. Supp. 2d 488 (E.D. Va. 1999) ....................40

**Statutes**

15 U.S.C. § 1116(a) ....................46

**Other Authorities**

Fed. R. App. P. 8(a) ....................47

Fed. R. App. P. 8(a)(2)....................14

Fed. R. App. P. 32(a)(5)....................1

Fed. R. App. P. 32(a)(6)....................1

Fed. R. App. P. 32(a)(7)(B) ....................1

Fed. R. App. P. 32(f)....................1

Fed. R. Civ. P. 52(a)(6)....................17

Local Appellate Rule 28.3(c)....................2,3

Local Appellate Rule 31.1(c)....................1

## COUNTERSTATEMENT OF ISSUES FOR REVIEW

1. Did the District Court properly analyze "Philly Wine School" as one of Appellant's claimed marks, where Appellant asserted rights in that phrase in its Complaint, motion, and proposed order?

2. Should the District Court's ruling be upheld on the basis that Appellant ignored its burden of proof in the District Court, failing to request an evidentiary hearing and offering little more than *ipse dixit* evidence, and therefore cannot show clear error on appeal?

3. Did the District Court correctly deny Appellant's Motion for Preliminary Injunction on the basis that Appellant failed to show a likelihood of success on the merits, a gateway requirement for preliminary relief, and that the balance of equities and the public interest weighed against an injunction?

## COUNTERSTATEMENT OF THE CASE

PhillyWine LLC's ("Appellant" or "PhillyWine") account of this case cannot be accepted as presented. Its brief misstates the District Court's opinion,[1] attributes

---

[1] *Compare* Br. 18–19 (the District Court "correctly observed that plenty of evidence showed that PhillyWine owns rights in its 'PhillyWine' mark" and "did not decide that issue"), *with* A19 (the evidence "doesn't reach that level"), and A21 ("'PhillyWine' is not distinctive"); *compare* Br. 24, 28 (the District Court credited WSOP "with a priority date nineteen years earlier" and recognized its rights "based solely on verbal use"), *with* A5, A9 (describing WSOP's own use of the phrase for "close to a decade," beginning around 2016), and A21–24 (addressing only PhillyWine's priority; the opinion never mentions verbal use).

to the record facts it does not contain,[2] abandons positions Appellant took below,[3] and holds Appellees' evidence to standards it declines to apply to its own.[4] Appellees KSWCO LLC, SALKEDS LLC, The National Wine School LLC, Alana Zerbe, and Keith Wallace ("KSWCO" or "WSOP" or "Appellees") therefore set out the facts as the record shows them. *See* 3d Cir. L.A.R. 28.3(c).

---

[2] *Compare* Br. 21, 41 (the website archive shows "PhillyWine" "more than 1,550 times" and "Neal Ewing Wine Services" 350 times), *with* A2547 ¶ 7 (the term appears "hundreds of times"; no count for "Neal Ewing Wine Services"); *compare* Br. 9 (WSOP's post-registration "conduct led to actual confusion," citing a December 2, 2025 email), *with* A1005 ¶ 52 (the email arrived "before the fraudulent registration issued").

[3] *Compare* Br. 16 n.2 (Appellant "never invoked" a family of marks), *with* A56 ¶ 20 (defining the "PhillyWine Marks" to include "the designation 'the Philly Wine School'"), A3810, A3822 (same; calling the accused mark "nearly identical to ... the PHILLY WINE school"), *and* A21, A25 (describing Appellant's argument that "Philly Wine School" is "simply a related formulation" of its mark); *compare* Br. 9 (use "continuously and exclusively for 25 years"), *with* A52 ¶ 3 (the parties "coexisted for over two decades"), A3811–12 (same), and A1287 ¶ 11 (PhillyWine's co-owner attesting that WSOP held the @PhillyWine handle by November 2018).

[4] *Compare* Br. 13, 26–28 (WSOP's colloquial usage cannot establish rights because it "is not evidenced in writing anywhere in the record"), *with* Br. 21 (Appellant is "an enterprise widely known as 'PhillyWine,' as the declarations attest"), *and* ECF No. 30 at 2, 5 (relying below on Wallace's statement that students called Ewing's business "simply 'PhillyWine'" and on a 2022 third-party reference to PhillyWine as "Philly Wine School"); *compare* Br. 6, 25–26 (third-party references are "legally irrelevant"), *with* Br. 7, 44–45 (relying on a third-party instructor biography and an anonymous Reddit post to show what "Philly Wine School" means to the public).

### A. The Wine School of Philadelphia Is the "Philly Wine School"

Keith Wallace began teaching wine classes in Philadelphia in 2001 and, within a year, was calling his program the Wine School of Philadelphia. A8; A1909 ¶¶ 7–8. Since 2015 WSOP has operated from a storefront at 109 South 22nd Street, holding tasting classes, certification tracks, and events "often multiple times per week." A8; A1912 ¶ 31. It offers no WSET courses. *Id.*

The public gave the school a shorter name. As early as 2005, press and third parties called it "Philly Wine School," and "that terminology continued to appear in articles, reviews, and event descriptions over time." A8–9. Appellant's own declarant concedes that a 2005 Graffiti article used the phrase for WSOP (A2548 ¶ 9; A1926) and a 2017 article did the same. A2013. By around 2016, WSOP had taken up the name itself: it "used 'Philly Wine School' more specifically in connection with consumer-oriented classes," the name "appeared in promotional materials and media coverage," and Wallace promoted those classes through the Instagram handle @phillywine. A9; *see* A1916 ¶¶ 67–68.

Appellant's evidence, on the other hand, contradicts its own account. Its co-owner Noelle Allen ("Allen"), a former WSOP student and events coordinator, attests that WSOP held @PhillyWine as of November 2018. A1286 ¶ 5; A1287 ¶ 11. Appellant's exhibits show the account promoting WSOP in December 2022 and identify it as "Wine School of Philadelphia (@phillywine)." A1102; A1192. Its

rebuttal declarant acknowledges that Wallace owns and operates the account (A2553 ¶ 39) and its third confusion witness came across it in early 2022 (before Appellant even existed). *Compare* A3604 ¶ 17 to A996 ¶ 9. The Section 2(f) record that Appellant attached to its motion adds third-party references of WSOP using "Philly Wine School" from 2017 through 2024 (A1179–86); declarations from ten WSOP students and alumni dating their awareness of "Philly Wine School" to as early as 2013 (A1199–1214); and $4.03 million in gross class sales between October 2016 and August 2025. A1195.

Appellant's own search for "phillywine," run in February 2026, returns WSOP's "Philly Wine School" page (A1023–24), and others in Philadelphia use the same two words as well, including a wine festival, a bottle shop, and several non-party Instagram accounts. A1917–18 ¶ 72(c). Appellant answers that none of these are wine schools. A2552 ¶¶ 34–36.

However, Appellant undercuts its own facts provided by its own declarants. For years, and as recently as 2024, Bob Trimble did business as "Philly Wine Guy," at phillywineguy.com, running a competing WSET program at Panorama Wine Bar in Old City, Philadelphia; and he still teaches WSET classes around the city. A1916 ¶ 65; A1917 ¶ 72(c).

A September 30, 2023 listing for a WSET Level 1 course at Panorama Wine Bar names "Philly Wine Guy" as the host. A2007–08. Furthermore, a Sommelier

Judgement of Pennsylvania Wines event hosted by the Pennsylvania Winery Association identifies Trimble with a phillywineguy.com email address alongside Noelle Allen as a co-owner of "PhillyWine School". A1991–93. Mr. Trimble's declaration in support of Appellant in this action leaves out that reference. He simply says he "founded a business called The Wine Guy" in about June 2008 and that he "exclusively associated the name PhillyWine and the website PhillyWine.com with Neal Ewing and his business." A1751 ¶ 6. Appellant's rebuttal declaration concedes that Trimble held phillywineguy.com from October 2020 until at least December 2024, distinguishing the site as a "personal blog" (A2553 ¶ 37), despite the fact the site itself references Mr. Trimble's WSET courses. A2000–06.

**B. Neal Ewing Wine Services**

Neal Ewing taught wine classes in Philadelphia for more than two decades. A6. His sole proprietorship, Neal Ewing Wine Services, became a WSET approved provider in 1999, and he registered phillywine.com in 2001. *Id*. Throughout this time, he had no school building; and his classes moved among restaurants, event spaces, and academic institutions. *Id*.

The name on the business was his own, and the District Court found that its "most common" name was "Neal Ewing Wine Services," that industry publications still used that name "[a]s recently as 2022 and 2023," and that from at least 2008 through 2022 phillywine.com itself described the business as operating "as Neal

Ewing Wine Services" since 1988. *Id.* Ewing says the same: he "operated PhillyWine as a sole proprietorship called Neal Ewing Wine Services." A992 ¶ 3. So do the WSET award records Appellant produced. A2550 ¶ 23; *see* Br. 3.

Ewing's marketing was modest. He never used Instagram (A1287 ¶ 11; A2549 ¶ 19), and apart from archived web pages showing the website's name, "phillywine," the only promotional materials from his tenure in the record are two newsletters, one from 2001 and one from January 2003. A2549 ¶ 19; A3487–95 (but even those newsletter acknowledge "Phillywine.com is the web address for Neal Ewing Wine Services"). The District Court found that "PhillyWine and its predecessor did not continuously use the name 'PhillyWine' in commerce." A19.

Appellant's proof that the public knows the business as "PhillyWine" came in three forms. Matt Kirkland ("Kirkland"), who became a co-owner only in 2022 (A996 ¶ 9), attests to more than 5,600 students, revenue "estimated to exceed $4 million," and "hundreds of thousands of dollars in advertising" across the business's entire history. A997–98 ¶¶ 16, 19. He offers no sales records, financial statements, or advertising invoices for those figures; the only exhibits cited in that paragraph are a student's email and materials on the industry standing of WSET credentials. A998 ¶ 19. The District Court found that Appellant "presents those metrics at the enterprise level" (A23), and WSOP pointed out below that those metrics do not separate the Neal Ewing Wine Services years from the PhillyWine LLC years. ECF No. 31 at 3.

WSOP's figures, by contrast, come with records: its Section 2(f) submission, which Appellant itself placed in the record, includes class sales reports showing $4.03 million in gross sales from October 2016 through August 2025. A1194–95.

Next, twenty-four customers and "industry veterans" submitted declarations describing their familiarity with "PhillyWine." A1722–93; ECF No. 30 at 4. And Kirkland's rebuttal declaration attaches the Internet Archive's history of phillywine.com, on which, he says, the term appears "hundreds of times." A2547 ¶ 7; A2556–3455. That same website described the business as "formerly Neal Ewing Wine Services" until the end of 2024. A2559; A1914 ¶ 48.

### C. A New Company, and a New Name

Ewing retired in 2022, and two of his instructors, Allen and Kirkland, stepped in. A7; A163. On May 26, 2022, Kirkland "registered PhillyWine LLC as a new limited liability company," naming himself and Allen as its officers. A996 ¶ 9; A1007–11. The new company built its own website, a "contemporized version" of phillywine.com that ran "in parallel" with Ewing's site "for several months" (A996 ¶ 10; *see* A163), and it needed WSET's approval before it could teach WSET courses. A996 ¶ 10; A162.

What the new company acquired from Ewing is undocumented. Its owners "felt there was no need for a written transfer agreement" (A2547 ¶ 5), a fact Appellant first disclosed on reply. *See* ECF No. 30 at 4; ECF No. 31 at 1. The record

is equally silent on how the new company became a WSET approved provider, whether by succeeding to Ewing's approval or by applying as a new provider. Kirkland says only that the owners "worked with WSET to get its approval to transfer" the status. A996 ¶ 10. However, no WSET document confirms this, and WSET's award records sit under two distinct program designations, "0757" for Ewing and "3169" for PhillyWine LLC. A2550 ¶ 23.

The only transfer the record documents is the domain name, which a WHOIS record indicates moved on December 14, 2022, more than six months after the company was formed. A119. Ewing's one contemporaneous writing about the handoff, an August 4, 2022 email, says that two instructors would be "taking over" once WSET approved them. A162–63. The claimed terms of the transfer surfaced only in declarations prepared for this litigation in February 2026. A993 ¶ 9; A996 ¶ 11. The District Court noted "some question about the exact scope of this transaction," but nonetheless assumed it for purposes of the motion, and cautioned that Appellant "will have to provide proof of that transaction." A7; A22 n.6.

As it got established, PhillyWine LLC moved closer to WSOP, both on the map and in name. After classes at temporary locations such as the Sofitel Hotel, it settled at the Fitler Club, "a short distance from the Wine School of Philadelphia's facility." A7. It also began calling itself "PhillyWine School." Its owners' biographies say they "co-own and run PhillyWine School" (A1147); an instructor's

biography says she "currently teaches at the Philly Wine School" (A1148); its Google Business Profile bore the name "PhillyWine School" (A1113); and in 2025 its Instagram account became @phillywineschool, a change its owners attribute to a marketing firm's advice. A7; A1920. The District Court found that "earlier versions of PhillyWine's website did not use that [Philly Wine School] terminology." A10.

**D. The Registration and the Platform Complaints**

On November 23, 2024, KSWCO applied to register PHILLY WINE SCHOOL, asserting first use as of August 15, 2016. A10; A1154. The examiner refused registration as primarily geographically descriptive and required a disclaimer of "WINE SCHOOL." A1161–64. KSWCO answered under Section 2(f) with media references, website pages, class sales records, and consumer declarations from as far back as 2013. A1169–1253. The United States Patent and Trademark Office ("USPTO") accepted that showing and registered the mark on December 9, 2025. A11; A1151.

KSWCO then took its registration to the platforms hosting Appellant's "PhillyWine School" online presence. A11–12. Instagram suspended @phillywineschool on December 18, 2025. A11; A1111. Wallace twice offered to restore the account if PhillyWine would stop using that handle, but PhillyWine declined and instead opened a new account, @mywineschool. A12; A1920 ¶¶ 92–93. Wallace's December 23, 2025 request to manage PhillyWine's Google listing,

which PhillyWine had titled "PhillyWine School," was not approved. A12; A1113–17. His January 5, 2026 complaint to Squarespace targeted "PhillyWine School" content on specific pages, and the website stayed up. A12; A1127–28. The District Court found that enforcing a registered mark "through established channels does not, by itself, demonstrate bad faith," and that Wallace's offers to restore the Instagram account "reflects an effort to assert and resolve competing claims rather than to create confusion." A32–33.

## E. The Claimed Confusion

After more than two decades coexisting side by side, Appellant points to three episodes of confusion. *See* A52 ¶ 3; A3811–12. The first came on December 2, 2025, a week before the registration issued. An existing PhillyWine student saw WSOP's "Core Sommelier" course listed under "Philly Wine School" in a third-party email, thought at first it was PhillyWine's WSET course, and realized on reading further that it was "for the other school." A1005 ¶ 52; A1027. The second is a short online review, from someone PhillyWine could not identify, complaining that PhillyWine was "not located where they claim." A1005–06 ¶ 53; A1029. The third, first offered on reply, arose from a 2022 dispute over National Wine School online courses, in which the declarant assumed an affiliation from WSOP's @phillywine Instagram handle. A3602–04 ¶¶ 6–17.

The District Court found this evidence "isolated" and "anecdotal," noting that it mostly arose "in late 2025, when PhillyWine began using 'Philly Wine School' more directly in its outward-facing branding," and that the record held "no evidence of confusion during earlier periods of coexistence." A30–31. WSOP, for its part, traced the confusion to PhillyWine's rebrand, which led to the cancellation of at least one WSOP course. A10. The District Court also found that, although third parties had long called WSOP "Philly Wine School" while PhillyWine purportedly operated under the "PhillyWine" name, Appellant "identifies no evidence of conflict, confusion, or enforcement efforts during those years." A32.

### F. The Case Appellant Presented Below

Appellant sued on February 26, 2026, and moved for a preliminary injunction (Plaintiff's motion and memorandum of law collectively referred to as the "Motion") the next day. A13; A51; A986; A3807–29. Its Complaint asserted rights in three "PhillyWine Marks," including "the designation 'the Philly Wine School'" (A56 ¶ 20), and asked the District Court to enjoin WSOP from using the same. A98–99. Its motion defined the marks the same way and called the accused mark "nearly identical to ... the PHILLY WINE school." A3810, A3822 (emphasis in original). Its proposed order would have enjoined the "Infringing Philly Wine School Mark." A988–90.

The Motion also set out the standard Appellant asked the District Court to apply and the relief it sought. It acknowledged that "[t]he burden is on the movant to make [the first] two requisite showings" before any balancing (*see* A3814 (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017))), and invoked a sliding scale only for the balance of hardships. A3827. It asked the District Court to bar any use of "PHILLYWINE, PHILLY WINE, or PHILLY WINE SCHOOL" (A3814), and conceded that requiring Appellee KSWCO to withdraw its Instagram complaint was mandatory relief requiring a heightened showing. A3826.

After WSOP opposed (ECF No. 25; A1908), Appellant replied with new declarations. A2547; A3601; A3655. In reply, Appellant conceded that it "did not regularly use 'Philly Wine School'" (ECF No. 30 at 5), and that it "does not claim it exclusively owns the phrase 'Philly Wine School' based on its use of that phrase." *Id*. at 4. It relied on a 2022 third-party reference to PhillyWine as "Philly Wine School" (*id*. at 5), and on Wallace's statement that students referred to Ewing's business "as simply 'PhillyWine.'" *Id*. at 1. WSOP filed a sur-reply. ECF No. 31.

During a March 17, 2026, status call, Appellant told the District Court it did not seek an evidentiary hearing, and WSOP concurred. A13 n.2. The District Court scheduled oral argument, then cancelled it, and decided the motion on the written record. A2046; *see* A3805–06; A13 & n.2.

### G. The Ruling on Review

On May 26, 2026, the District Court denied the motion. A4. It held that "Philly Wine School" is descriptive and that Appellant had not shown secondary meaning in it (A17–21); that "PhillyWine" itself is "not distinctive" (A21); that Appellant had shown neither prior use nor market penetration of "Philly Wine School," relying in part on Appellant's concession that it "did not regularly use" the phrase (A22–24); and that its family of marks theory failed. A25–26. The likelihood of confusion factors under *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983), pointed away from confusion. A26–36. Although Appellant showed a likelihood of irreparable harm from the Instagram suspension (*see* A36–39), the equities favored WSOP and an injunction would not serve the public interest. A39–40. The District Court reserved ruling on whether KSWCO's trademark registration is valid. A21 n.4.

The District Court also addressed "PhillyWine" itself. It identified all three marks Appellant asserted, "PhillyWine," "phillywine.com," and "Philly Wine School," before explaining that the alleged infringement "centers on" WSOP's use of the phrase "Philly Wine School." A16. It found that Appellant's evidence about "PhillyWine" and "phillywine.com" "could demonstrate recognition of those terms, though in my view it doesn't reach that level." A19. WSOP argued below that registering a domain name confers no trademark rights. ECF No. 25 at 16. Appellant

never responded to that point, arguing instead that "PhillyWine.com is interchangeable with PhillyWine." ECF No. 30 at 4–5. The District Court found that the domain name "alone is not enough to establish use, and PhillyWine doesn't argue otherwise." A19. It also found that similar terminology "appears in use by third parties across the wine community." A20. In its *Lapp* analysis, the District Court compared "PhillyWine" directly with "Philly Wine School" and found that, although the two share "Philly" and "Wine," they "differ in structure, sound, and meaning." A28. It found "PhillyWine" "somewhat more distinctive" than the phrase but built from "common terms that appear in the marketplace in connection with wine-related services," and it found the asserted marks weak in commercial strength. A29–30.

### H. After the Ruling

Appellant told the District Court that its @phillywineschool account would be "permanently disabled" by June 16, 2026 unless KSWCO withdrew its Instagram complaint. A1005 ¶ 51; A11–12; A3809, A3825. PhillyWine had already declined Wallace's two offers to restore the account. A12; A1920 ¶ 93. After the District Court denied the motion, Appellant noticed this appeal on June 5, 2026 (A1–3), but did not seek an injunction pending appeal (*see* Fed. R. App. P. 8(a)(2)), nor ask this Court to expedite the appeal. It filed its opening brief on September 28, 2026.

## SUMMARY OF ARGUMENT

The District Court denied a preliminary injunction because Appellant failed to show that it owns any protectable mark. A19–24; A36. That finding rests on the record Appellant chose to build, and Appellant shows no clear error in it. Much of Appellant's opening brief ("Br.") attacks WSOP's registration, when the operative question is whether Appellant proved rights of its own. This Court should affirm.

*First*, Appellant faults the District Court for treating "Philly Wine School" as a relevant mark, but Appellant put that phrase at the center of its case. A56 ¶ 20; A988–90. Courts decide the case the parties present, and a party cannot complain of an analysis it invited. Appellant's narrower theory on appeal fails on the same findings: "PhillyWine" and "Philly Wine School" "differ in structure, sound, and meaning," and neither "PhillyWine" nor "phillywine.com" acquired secondary meaning. A19–21, A28. Appellant also leaves unchallenged, and so has waived, the holding that it has no rights in "Philly Wine School." A21–26.

*Second*, Appellant recasts findings of fact as legal error. Priority, continuous use, secondary meaning, and likelihood of confusion are findings of fact reviewed for clear error. Appellant asks this Court to reweigh evidence the District Court already weighed, which clear error review does not permit. Appellant even dismisses third-party references to WSOP as legally insufficient while relying on the same kind of references in support of its arguments. A150, A167, A174; A2549 ¶ 18.

*Third*, the District Court's factual findings follow from Appellant's own failure to carry its burden. Appellant chose a paper record and declined an evidentiary hearing. A13 n.2. It offered generalized revenue and advertising estimates with no records behind them (A998 ¶ 19), and no written intellectual property assignment from Neal Ewing, only the say-so of interested witnesses. A22 n.6. It also offered nothing close to clear and convincing evidence of fraud, so WSOP's registration keeps its presumption of validity. A21 n.4; A39.

*Fourth*, the record supports the District Court's findings on ownership and confusion. For most of its history, PhillyWine's predecessor did business as "Neal Ewing Wine Services," and the domain name "alone is not enough to establish use." A19. Businesses, events, and individuals across the Philadelphia wine community use "Philly Wine" in their own names. A20. That phrase joins a place and a product, and Appellant, which bears the burden of proving its unregistered marks protectable, has not shown that it is not generic. Appellant's evidence of actual confusion was "minimal, recent, and tied to PhillyWine's own more recent use of the [Philly Wine School] phrase." A35. In effect, PhillyWine caused the confusion it now invokes. Because Appellant owns no protectable mark, its *Lapp* arguments cannot carry this appeal, and Appellant shows no clear error in the District Court's weighing of those factors in any event.

*Finally*, Appellant's failure on the merits ends the inquiry, and the statutory presumption of irreparable harm never arises. Appellant's conduct after the ruling also undercuts the urgency it claims: it sought no injunction pending appeal and no expedited review, and it let pass the June 16 date by which, it said, its @phillywineschool Instagram account would be permanently disabled. A3809, A3825. The equities favor WSOP because the injunction Appellant sought would bar WSOP from using its federally registered mark, while PhillyWine "continues to operate its business through its website and alternative channels." A39. The public interest follows the merits. A40.

## ARGUMENT

### I. COUNTERSTATEMENT OF THE STANDARD OF REVIEW

On appeal from the denial of a preliminary injunction, this Court reviews the ultimate decision for abuse of discretion, findings of fact for clear error, and conclusions of law de novo. *Reilly*, 858 F.3d at 176; *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Findings of fact, "whether based on oral or other evidence, must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(6). The rule applies with equal force to findings drawn from declarations and documents. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). A district court's conclusions therefore do not become questions of law "merely because they are based on evidence that is theoretically susceptible of independent evaluation by

an appellate court." *Am. Home Prods. Corp. v. Barr Lab'ys, Inc.*, 834 F.2d 368, 370 (3d Cir. 1987). A finding is clearly erroneous only if it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 130–31 (3d Cir. 2017) (quoting *Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 92 (3d Cir. 2016)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

A preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances," *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014), and only upon a "clear showing that the plaintiff is entitled to such relief." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014). The movant must first meet "the threshold for the first two 'most critical' factors": likelihood of success on the merits and irreparable harm. *Reilly*, 858 F.3d at 179. Only "[i]f these gateway factors are met" does a court weigh the balance of equities and the public interest. *Id.* A movant that fails either gateway factor cannot obtain relief.

## II. THE DISTRICT COURT DECIDED THE CASE APPELLANT PRESENTED

Appellant's lead argument is that the District Court "erred fundamentally by starting from the wrong premise": that "Philly Wine School" was "the relevant

mark." Br. 12, 16 (citing A5, A16). That premise, however, came from Appellant. Courts decide the case the parties present. "[I]n both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).

A party cannot complain on appeal of an error that it, "through conduct, encouraged or prompted the trial court to make." *Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014) (quoting *Lima v. Newark Police Dep't*, 658 F.3d 324, 333 n.2 (3d Cir. 2011)). "[W]hen a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession." *Id.* (quoting *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116–17 (3d Cir. 1992)). Appellant's position below was unequivocal. Its regret over that position supplies no ground for reversal.

Appellant argued the three marks interchangeably, treating proof of one as proof of all. A3810, A3815–19. Its Complaint and Motion claimed three marks, including "the PHILLY WINE school," in continuous use since 1999. A56 ¶ 20; A3810, A3815. Its proposed order asked the District Court to enjoin the "Infringing Philly Wine School Mark." A988–90. Its own witness declared that PhillyWine advertises "most effectively" through @PhillyWineSchool. A998 ¶ 18. Appellant

stepped back only in reply, saying it "did not regularly use" the phrase and "does not claim it exclusively owns" it "based on its use of that phrase." ECF No. 30 at 4–5. It never withdrew the claim.

Therefore, the District Court analyzed "Philly Wine School" because Appellant asked it to. A16. The District Court determined that Appellant has no rights in the Philly Wine School phrase, a holding Appellant leaves unchallenged on appeal. A21–26. The District Court also addressed the designations Appellant now presses, "PhillyWine" and "phillywine.com," and found them not distinctive. A21. On appeal, Appellant redefines its marks as those two alone (*see* Br. 3), and disclaims any family of marks. *See id.* 16 n.2. Appellant is free to narrow its appeal, but that choice leaves the District Court's analysis intact.

Even if analyzing "Philly Wine School" were error, narrowing the appeal also changes nothing about the result. Below, Appellant argued confusion between WSOP's "Philly Wine School" and its own claimed "the PHILLY WINE school." A3821–23. On appeal, it argues confusion between "Philly Wine School" and "PhillyWine." Br. 13, 17. The District Court made that comparison too, and found that the marks differ in structure, sound, and meaning. A28. It also found that "PhillyWine" and "phillywine.com" lack secondary meaning. A19, A21. Those findings answer the narrower case on their own, and this Court "may affirm on any

basis supported by the record." *Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016).

What Appellant has dropped, meanwhile, stays dropped. Its opening brief leaves untouched the holding that Appellant has no rights in "Philly Wine School." A21–26. "An issue is waived unless a party raises it in its opening brief." *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Because the District Court analyzed the marks Appellant asked it to analyze, and its findings on "PhillyWine" and "phillywine.com" independently defeat Appellant's narrower theory, Appellant's lead argument fails.

## III. APPELLANT CANNOT RECAST FINDINGS OF FACT AS LEGAL ERROR

Appellant may choose which arguments to pursue on appeal. It may not, however, recast the District Court's answer to Appellant's own questions as legal error. Appellant's appeal rests on two theories that the standard of review forecloses: it labels the District Court's findings of fact as errors of law to obtain *de novo* review; and it asks this Court to resolve in its favor issues the District Court did not need to reach, on which Appellant bore the burden and offered insufficient proof. Each theory fails.

First, Appellant repeatedly labels the District Court's factual determinations as legal ones, asking this Court to review the evidence *de novo* under the guise of legal error. While this Court reviews issues of law *de novo*, findings of fact leading

to a particular legal conclusion are reviewed for clear error. *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) ("When reviewing a district court's grant of a preliminary injunction, we review the court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision granting the preliminary injunction for an abuse of discretion."). *See infra* Part III.A.

Second, Appellant ignored its burden below to make a "clear showing" that it was entitled it to relief. *Groupe SEB*, 774 F.3d at 197; *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 197 (3d Cir. 1990). It chose to proceed on a paper record and offered insufficient evidence on two issues the District Court did not need to reach: the intellectual property assignment from Neal Ewing on which its claimed ownership and priority depend, and its charge that WSOP procured its registration by fraud. The District Court's choice to assume the first and leave the second undecided gives Appellant no ground for reversal. *See infra* Part III.B.

### A. The Challenged Rulings Are Findings of Fact

Appellant characterizes various conclusions reached by the District Court as "legal error" on the supposed basis that Appellant's evidence supported the opposite conclusion. But these supposed "legal errors" are factual determinations subject to clear error review: likelihood of confusion, secondary meaning, priority of use, and continuous use. *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (citing *Am. Home*, 834 F.2d at 370) (likelihood of confusion and secondary

meaning). And Rule 52(a) requires clear error review of "all findings of fact." *Am. Home*, 834 F.2d at 370.

As to likelihood of confusion, Appellant spends more than 12 pages asserting that the District Court's "weighing of those factors was legally flawed." Br. 28. But weighing the *Lapp* factors is the factfinder's job. Indeed, Appellant's own proposed order treated likelihood of confusion as a matter of proof. *See* A988 ¶ i ("Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendant's Infringing Philly Wine School Mark (as defined in Plaintiff's Complaint) because Defendants have created a likelihood of confusion between the Infringing Philly Wine School Mark and continue to escalate their unlawful conduct that was not authorized by Plaintiff.").

The District Court weighed the evidence, found Appellant's confusion evidence "isolated" and "anecdotal," and concluded that "[t]he factors that carry the greatest weight point away from confusion." A30–31; A35. While Appellant may throw the adverb "legally" in front of whatever it contends to be an error, its argument amounts to a disagreement with how the District Court assessed the evidence. *See, e.g.*, Br. 34 (arguing that the record showed "three instances of actual confusion" but the District Court "discounted" that evidence improperly).

As to secondary meaning, Appellant contends that it is "an enterprise widely known as 'PhillyWine,' as the declarations attest," and points to how often

"PhillyWine" appears in its website archive. Br. 21, 41. The District Court weighed that evidence, too. It found that the evidence "could demonstrate recognition of those terms, though in my view it doesn't reach that level," and that "[e]xclusivity presents a further obstacle." A19; A20. Appellant asks this Court to weigh the same evidence differently, which is a challenge to findings of fact, not a claim of legal error.

On priority of use, Appellant attacks the District Court's finding of fact that third-party media used the "Philly Wine School mark as early as 2005." Br. 21. Appellant also claims that WSOP's use of the mark was too "sporadic" to be afforded protection. *Id*. According to Appellant, the "sum total evidence in the record" does not support the District Court's conclusions. Br. 23. To the extent Appellant asserts a "legal argument" at all, it claims that "two alleged obscure news articles" are not enough to show continuous use, and the articles in question are insufficient as a matter of law because only use of the mark by the seller of goods or services is sufficient to constitute use. Br. 22, 26. That argument overlooks what the District Court actually found. Media coverage and third-party publications referred to WSOP as "Philly Wine School" "as early as 2005," and "that terminology continued to appear in articles, reviews, and event descriptions over time." A8–9. "Beginning around 2016, the Wine School used 'Philly Wine School' more specifically in connection with consumer-oriented classes, and that terminology appeared in promotional materials and media coverage." A9. The District Court thus

dated WSOP's own use to about 2016, finding that WSOP "has used the term for close to a decade." A5.

The record supports the finding. Wallace began teaching wine classes in Philadelphia in 2001, was calling his program the Wine School of Philadelphia within a year, and has taught from a storefront at 109 South 22nd Street since 2015. A8; A1909 ¶¶ 7–8; A1912 ¶ 31. The Section 2(f) record, which Appellant itself attached to its Motion, shows the public coming to know the school as "Philly Wine School": third-party references to WSOP by that name from 2017 through 2024 (A1179–86); declarations from ten WSOP students and alumni dating their awareness of the mark to as early as 2013 (A1199–1214); and $4.03 million in class sales from October 2016 through August 2025. A1195. Wallace's sworn declaration confirms that history: consumers and the press called the school "Philly Wine School" as early as 2005, and WSOP itself used the name for its consumer-oriented classes beginning in August 2016. A1911 ¶¶ 21–22; A1916 ¶ 67.

Those findings also rest on third-party references (*see* A1926, A2013), and Appellant shows no clear error in them.[5] At the preliminary injunction stage, a court "may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction." *Kos*, 369 F.3d at 718; *see* A14. Appellant

---

[5] Appellant's own declarant concedes that a 2005 Graffiti article used "Philly Wine School" to refer to WSOP. *See* A2548 ¶ 9; A1926.

understands this perfectly well when the evidence runs its way: below, it attached third-party references as proof of its own use (A150, A167, A174), and held up a single 2022 newspaper article calling Ewing the "Philly Wine School director" as proof that WSOP lacked exclusivity. A2549 ¶ 18. Third-party references count, it seems, but only when they help Appellant.

Rather than focusing on why its mark is protectable, Appellant spends multiple sections of its brief quibbling with the protectability of WSOP's "Philly Wine School" mark. Br. 21–28. This line of argument addresses the wrong question. Appellant's burden was to show that it owns a protectable mark that WSOP infringes upon. Attacking WSOP's rights answers neither part. Beyond that, Appellant simply asks this Court to reweigh the evidence and find differently.

As to continuous use, the District Court expressly found that "the evidence establishes that [Appellant] and its predecessor did not continuously use the name 'PhillyWine' in commerce, let alone the name 'Philly Wine School.'" A19. It also found that "for much of its existence, it marketed itself under the banner 'Neil [sic] Ewing Wine Services,'" and that Appellant's "primary use of a phrase related to 'PhillyWine' was its domain name 'phillywine.com,' but that alone is not enough to establish use[.]" *Id.* Appellant responds that the record contained rebuttal evidence that would have supported a finding that PhillyWine continuously used "PhillyWine." *See* Br. 20–21. Appellant does not, because it cannot, show that the

District Court clearly erred in that determination. Appellant fails to identify a legitimate legal error and fails to show clear error as to the District Court's factual determinations.

### B. Appellant Did Not Carry Its Burden Below

Below, Appellant had to prove each element of its infringement claim: that it had a valid and legally protectable mark, that it owned the mark, and that WSOP's use was likely to cause confusion. A16 (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). Because its claimed marks are "neither registered nor inherently distinctive," as Appellant concedes (*see* Br. 17), that meant proving secondary meaning. "Proof of secondary meaning entails vigorous evidentiary requirements, and the burden of proof rests upon the party asserting rights in the purported mark." A17 (quotation omitted). Appellant chose to carry that burden on a paper record, declining the District Court's invitation to hold an evidentiary hearing. *See* A13 n.2 ("During a status call that I conducted, each party stated that it did not seek an evidentiary hearing[.]"). Its opening brief leaves that choice unmentioned. The District Court scheduled oral argument, then cancelled it and decided the motion on the written record Appellant chose. A2046; *see* A3805–06; A13 & n.2.

Appellant nonetheless relies on *Arrowpoint Capital Corp. v. Arrowpoint Asset Management, LLC*, 793 F.3d 313 (3d Cir. 2015). Br. 46. *Arrowpoint* involved a

different kind of ruling. There, the district court, without a hearing, "refused to credit evidence because of perceived credibility issues with the affiants and because there was no opportunity to cross examine the individuals." *Id.* at 324. It also failed "to adequately set forth its rationale for discounting [the movant's] evidence." *Id.* at 326.

Here, the District Court made no adverse credibility finding, and it explained why Appellant's evidence fell short. It found that Appellant's sales and growth evidence did not tie that success to "Philly Wine School." A20. And it found Appellant's confusion evidence "isolated" and "anecdotal": the December 2025 email reflected "at most, an initial assumption," and the examples arose only after Appellant began using "Philly Wine School" in late 2025. A30–31. The District Court's ruling addressed the *sufficiency* of Appellant's evidence, not its credibility. A movant that chooses a paper record and offers thin evidence on dispositive issues cannot show clear error when the court finds that evidence insufficient.

Appellant also failed to carry its burden on two further issues. It offered no written evidence that Neal Ewing assigned to PhillyWine LLC any trademark rights he had in "PhillyWine" and "phillywine.com," a failed proof that independently defeats its claim to priority. And it offered nothing close to clear and convincing evidence that WSOP procured its registration by fraud, so the registration keeps its presumption of validity.

### 1. The Claimed Assignment Is Unproven

Even if "PhillyWine" and "phillywine.com" were protectable marks (they are not), Appellant presented no clear evidence that any common law protection afforded to those marks transferred to PhillyWine LLC when Neal Ewing retired in 2022. Appellant's entire case is premised on its assertion that its common law rights to "PhillyWine" and "phillywine.com" date back to 1999 because Appellant is a successor entity to sole proprietor Neal Ewing. To bridge the gap between its 2022 formation and alleged rights dating decades earlier, Appellant submitted two declarations stating that Ewing transferred the business and its intellectual property, but no assignment agreement or other transfer document ever made it to the record. A993 ¶ 9; A996 ¶ 11.

While this Court has noted that "clear and uncontradicted oral testimony" *can* be used as evidence of an assignment in the absence of a writing, it cautioned courts to require "strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 822 (3d Cir. 2006). "[S]elf-serving testimony of one of [the plaintiff's] principals" concerning the alleged assignment is not strong evidence establishing assignment and is "insufficient to prove a trademark assignment as a matter of law." *Id.*; *see also Cobra Enters., LLC*

*v. All Phase Servs., Inc.*, 2023 WL 3916276, at *4-5 (D.N.J. June 9, 2023) (declining to take the affiant at his word about an oral assignment that was only supported by bare bones assertions and lacked evidence).

Notably, Appellant admitted that Neal Ewing did not transfer any alleged intellectual property rights in writing. *See* Br. 18 n.3; A2547 ¶ 5. No contemporaneous document corroborates the terms of any transfer. WSET's award records sit under two distinct program designations, "0757" for Ewing and "3169" for PhillyWine LLC. A2550 ¶ 23. The only transfer the record documents is the domain name, which moved on December 14, 2022, more than six months after PhillyWine LLC was formed. A119. And Ewing's one contemporaneous writing about the handoff, an August 4, 2022 email, says nothing about trademarks or goodwill. A162–63.

While the District Court gave Appellant the benefit of the doubt, assuming for purposes of its analysis that the asserted trademark rights were indeed transferred to PhillyWine LLC (A22 n.6), Appellant never placed in the record the "strong evidence" *Doeblers'* requires to show that it acquired Ewing's rights. The District Court said as much: "If this case moves forward, PhillyWine will have to provide proof of that transaction." A22 n.6. Appellant's failure to prove the assignment is an independent ground to affirm. *See Davis*, 824 F.3d at 350. A party that cannot show it owns a mark cannot obtain an injunction to protect it.

### 2. No Clear and Convincing Evidence of Fraud

Appellant argued to the District Court that WSOP's registered trademark was not entitled to a presumption of validity because WSOP procured the mark through fraud. A3820. Specifically, Appellant argued that Keith Wallace "made multiple material misrepresentations to the USPTO" when applying for the registered mark. *Id*.

To invalidate a trademark on the basis of fraud, a movant must prove that: (1) Registrant made a false representation regarding a material fact, (2) Registrant knew the representation was false when made, (3) Registrant intended to induce the USPTO to act in reliance on the misrepresentation, (4) actual, reasonable reliance on the misrepresentation by the USPTO, and (5) proximately resulting damages. *Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc.*, 674 F. Supp. 3d 132, 142 (E.D. Pa. 2023). There is a "heavy burden of proof" on a party to establish these factors and each factor must be established "to the hilt," through clear and convincing evidence. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). Moreover, in establishing these factors, "[t]here is no room for speculation, inference or surmise" and "any doubt must be resolved against the charging party." *Id.* (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B. 1981)).

Rather than attempting to establish fraud through clear and convincing evidence, Appellant submitted a declaration accusing Wallace of making

misrepresentations to the USPTO. *See, e.g.*, A1002–04 ¶¶ 33–43; A3820–21. It offered no evidence of the specific intent to deceive that fraud requires. *See Bose*, 580 F.3d at 1245. And Wallace swore a declaration in opposition in which he explained each and every perceived discrepancy highlighted by Appellant. A1916–19 ¶¶ 71–82.

The District Court also found it unnecessary to decide whether the registration is valid, because Appellant's lack of senior rights over the mark was dispositive either way. A21 n.4. The registration therefore kept its presumption of validity, which the District Court properly weighed in balancing the equities. *See* A39 (the "USPTO's issuance of that registration carries legal consequences, including a presumption of validity and an exclusive right to use the mark in commerce for the listed services").[6] The burden to overcome that presumption was Appellant's, and Appellant offered nothing close to clear and convincing evidence of fraud. Given Appellant's heavy burden and the standard of review on the appeal, there is simply nothing in the record that would warrant reversal. Appellant therefore cannot obtain an injunction preventing WSOP from using its own registered trademark.

[6] The USPTO examined KSWCO's application and refused registration only as primarily geographically descriptive, citing no conflicting mark. A1161–64. It then accepted KSWCO's Section 2(f) showing and registered the mark. A1169–1253; A1151.

## IV. THE DISTRICT COURT PROPERLY DENIED THE PRELIMINARY INJUNCTION

The District Court properly denied Appellant's request for a preliminary injunction. It found that Appellant failed to show a likelihood of success on the merits (*see* A36), and that failure was dispositive. A movant that does not clear that gateway factor cannot obtain an injunction, whatever its showing on the others. *Reilly*, 858 F.3d at 179; A40. Appellant itself acknowledged below that "[t]he burden is on the movant to make [the first] two requisite showings" before any balancing, and it invoked a sliding scale only for the balance of hardships. A3814, A3827. Appellant's conduct after the ruling also undercuts the irreparable harm it claimed. The balance of the equities and the public interest, addressed below, likewise weigh against an injunction.

### A. Appellant Showed No Likelihood of Success

Where, as here, the request for injunctive relief is premised on a claim of trademark infringement, the likelihood of success on the merits element requires the plaintiff to prove (1) the mark is valid and legally protectable; (2) it owns the mark; and (3) defendants' use of the mark is likely to create confusion concerning the origin of the goods or services. *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008). Failure to prove even one of these indispensable elements defeats a request for relief. Appellant proved none. The District Court

therefore had no basis to impose an extraordinary remedy, and Appellant has no basis to claim clear error here.

### 1. Appellant Owns No Protectable Mark

First, Appellant failed to demonstrate it owned "PhillyWine," "phillywine.com," and "the PHILLY WINE school," and that these alleged marks are valid and legally protectable. Because Appellant holds no registration for any of the three marks, it therefore bore the burden of proving common law rights in each mark. When a plaintiff is claiming common law protection over a mark, the plaintiff must show that (1) it was the first to adopt the mark in commerce, (2) it has continuously used the mark in commerce since its adoption, and (3) its mark is inherently distinctive or has acquired secondary meaning. *Douglas v. Osteen*, 317 F. App'x 97, 99 (3d Cir. 2009) (citing *A & H Sportswear*, 237 F.3d at 210–11).

#### a. WSOP Used "Philly Wine School" First

The District Court determined that Appellant's evidence did not establish prior use or market penetration as to the "Philly Wine School" mark. A22. WSOP presented evidence that the press and third parties called it "Philly Wine School" as early as 2005, and the District Court found that WSOP itself has used the name for consumer-oriented classes since around 2016, "close to a decade." A5; A8–9; ECF No. 25 at 21. In contrast, Appellant's only evidence of its use of "Philly Wine School" was the following: (1) Neal Ewing's declaration that claimed

phillywine.com had hosted "general information about the PhillyWine school" since 2001 (which did not in any way show the use of "Philly Wine school" in trade); (2) PhillyWine changing its website to add reference to itself as "PhillyWine School" at the end of 2024; and (3) PhillyWine changing its Instagram handle from @_phillywine_ to @phillywineschool in 2025. A7; A1920; A2549 ¶¶ 20–21.

The District Court found this evidence did not satisfy Appellant's burden of proof. Instead, it noted that PhillyWine had promoted itself as "Neal Ewing Wine Services" for much of the relevant period and only began using "Philly Wine School" in recent years. A23. Moreover, the District Court found that Appellant did not show that any of its commercial activity had occurred under the "Philly Wine School" name and did not connect the business's growth to "Philly Wine School." A23–24. As the District Court noted, Appellant's concession that it "did not regularly use 'Philly Wine School'" is "difficult to reconcile with its claim of longstanding market recognition." A24 (quoting ECF No. 30 at 5).

On appeal, Appellant argues these findings were incorrect but, in doing so, confuses the relevant issue. Appellant argues at length that *WSOP* did not show longstanding use of its *registered* mark. *See* Br. 21–28. The issue at hand, however, is whether *Appellant* satisfied its burden of proof by showing *PhillyWine's* longstanding use of its claimed marks (so as to qualify it for common law protection over these marks).

Beyond addressing the wrong question, Appellant asks this Court to credit its evidence over WSOP's. *See id.* That is a request to reweigh the evidence, which clear-error review does not permit. *See Anderson*, 470 U.S. at 574. The record supports the District Court's finding that Appellant failed to show it was first to use "Philly Wine School" in commerce, and that finding should stand.

**b. PhillyWine Did Not Continuously Use "PhillyWine"**

Likewise, the District Court did not clearly err in finding that PhillyWine only sporadically used "PhillyWine" in commerce. A19. While Neal Ewing began using the phillywine.com domain in 2001, he primarily used "Neal Ewing Wine Services" to advertise his business. A6; ECF No. 25 at 16. Ewing himself attests that he "operated PhillyWine as a sole proprietorship called Neal Ewing Wine Services" (A992 ¶ 3); WSET's award records carry that name (A2550 ¶ 23); and industry publications still used it "[a]s recently as 2022 and 2023." A6. Ewing never used Instagram, and apart from archived web pages, the only promotional materials from his tenure in the record are two newsletters, one from 2001 and one from January 2003. A1287 ¶ 11; A2549 ¶ 19. "PhillyWine" was not consistently used to refer to Neal Ewing's wine business until 2022, when Ewing allegedly transferred and assigned his rights in Neal Ewing Wine Services to Allen and Kirkland.[7] A6; ECF

[7] Even assuming Neal Ewing did continuously use "PhillyWine" in commerce, Appellant presented no competent evidence to support its assertion that it acquired

No. 25 at 16–17. Even after Allen and Kirkland formed PhillyWine LLC, PhillyWine continued to state it was "formerly Neal Ewing Wine Services" until the end of 2024. A1914 ¶ 48; ECF No. 25 at 17.

The District Court correctly concluded "much of the evidence establishes that PhillyWine and its predecessor did not continuously use the name 'PhillyWine' in commerce[.]" A19. Rather, it recognized that "for much of its existence, it marketed itself under the banner 'Neil [sic] Ewing Wine Services.'" *Id.* Moreover, the District Court noted PhillyWine's "primary use of a phrase related to 'PhillyWine' was its domain name 'phillywine.com,' but that alone is not enough to establish use[.]" *Id.* WSOP made that point below (*see* ECF No. 25 at 16), and Appellant never responded to it; it argued only that "PhillyWine.com is interchangeable with PhillyWine." ECF No. 30 at 4–5.

Appellant argues that the District Court erred because the record contained rebuttal evidence that would have supported a finding that PhillyWine continuously used "PhillyWine." *See* Br. 20–21. But as before, this argument does nothing to show clear error by the District Court. Rather, Appellant merely disagrees with the District Court's conclusion and attempts to paint this counterfactual narrative as a legal error. As such, because the record supports the District Court's finding that

---

the rights to Neal Ewing's use of "PhillyWine" and "phillywine.com" so as to claim first use of these marks in commerce. ECF No. 25 at 15–16.

PhillyWine did not continuously use "PhillyWine" or "phillywine.com" in commerce, that finding is not clearly erroneous.

#### c. The Claimed Marks Lack Secondary Meaning

The District Court's conclusion that Appellant's claimed marks did not acquire secondary meaning as to PhillyWine is also supported by the record evidence.[8] When determining whether a mark has acquired secondary meaning, courts consider eleven non-exclusive factors: (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). A district court's conclusion on secondary meaning is a finding of fact and, as such, is reviewed for clear error on appeal. *Dranoff-Perlstein*, 967 F.2d at 862.

WSOP argued to the District Court that these factors weighed against finding that "PhillyWine," "phillywine.com," and "Philly Wine School" had acquired secondary meaning as to PhillyWine. ECF No. 25 at 18–20, 21. First, as to

---

[8] Appellant does not argue its claimed marks are inherently distinctive. Below, it went straight to secondary meaning "[e]ven if it were found that PhillyWine was at first a descriptive term." A3815. On appeal, it calls "any descriptiveness of the PhillyWine Marks . . . a non-issue." Br. 40.

"PhillyWine" and "phillywine.com," WSOP pointed out (among other arguments) that PhillyWine's use of these marks was sporadic and, more importantly, its use of "PhillyWine" was far from exclusive. Indeed, in addition to WSOP's own use of the Instagram handle @phillywine since 2016, which Appellant's own witnesses confirm,[9] WSOP also cited numerous third parties using "Philly Wine" in reference to companies, wine events, and persons throughout the Philadelphia wine community. *Id.* at 19–20; A1917–18 ¶ 72(c). Appellant's own February 2026 search for "phillywine" returns WSOP's "Philly Wine School" page and WSOP Instagram posts tagged #phillywine. A1023–24. Appellant's only answer below was that none of these third parties is a wine school (*see* A2552 ¶¶ 34–36), but one of them, Bob Trimble, ran a competing WSET program as "Philly Wine Guy," as discussed below.

Appellant's evidence on the first factor, the extent of sales and advertising, consists of Kirkland's estimate that revenue exceeded $4 million and that advertising reached "hundreds of thousands of dollars," with no records behind either figure or visual examples of what those advertisements entailed (A998 ¶ 19), and the District Court found that Appellant presented those metrics only "at the enterprise level."

[9] Appellant's co-owner Allen attests that WSOP held @PhillyWine as of November 2018. A1286 ¶ 5; A1287 ¶ 11. Appellant's exhibits show the account promoting WSOP in December 2022 and identify it as "Wine School of Philadelphia (@phillywine)." A1102; A1192. And Appellant's rebuttal declarant acknowledges that Wallace owns and operates the account. A2553 ¶ 39.

A23. As WSOP pointed out below, those figures do not separate the Neal Ewing Wine Services years from the PhillyWine LLC years. ECF No. 31 at 3. WSOP's figures, by contrast, come with records: class sales reports showing $4.03 million in gross sales from October 2016 through August 2025. A1194–95.

WSOP also showed that Appellant's customer declarations came from its friends rather than disinterested consumers of wine education. A1914–16; ECF No. 25 at 20. Declarations from people with close ties to the party offering them carry little weight on secondary meaning. *See Wash. Speakers Bureau, Inc. v. Leading Auths., Inc.*, 33 F. Supp. 2d 488, 498 n.23 (E.D. Va. 1999) (discounting affidavits from persons with "a longstanding business relationship" with the plaintiff, "which casts some doubt upon the objectivity of the affiants"). One declarant, Bob Trimble, swore that he "exclusively associated the name PhillyWine and the website PhillyWine.com with Neal Ewing and his business." A1751. He left out the fact that, for years and as recently as 2024, he operated under the trade name "Philly Wine Guy" at phillywineguy.com, running a competing WSET program at Panorama Wine Bar, and that he operates professionally around the city using that name. A1916 ¶ 65; A1917 ¶ 72(c); A2007–08. At a recent wine event Trimble identified himself with a phillywineguy.com email address alongside Noelle Allen as a co-owner of "PhillyWine School". A1991–93. A declarant who ran a competing WSET

program under a "Philly Wine" name is weak proof that consumers associate that phrase with PhillyWine alone.

Second, as to "Philly Wine School," in its motion, Appellant cited one instance of actual confusion where a student mistakenly confused WSOP's advertisement for "Core Sommelier Course (Winter Semester) Philly Wine School Philadelphia, Pennsylvania" as referring to PhillyWine. A1005 ¶ 52; A1027. However, this instance of confusion occurred in 2025, *after* PhillyWine rebranded itself as PhillyWine School. *See id*. PhillyWine caused that confusion by adopting the name WSOP had used for years. It settled at the Fitler Club, "a short distance from the Wine School of Philadelphia's facility" (A7), and began calling itself "PhillyWine School" in its owners' biographies, an instructor's biography, and its Google Business Profile. A1147; A1148; A1113. Earlier versions of its website did not use that terminology. A10. The District Court found as much: the confusion was "minimal, recent, and tied to PhillyWine's own more recent use of the phrase." A35. Confusion that PhillyWine created cannot support its claim to the name.

Appellant's remaining confusion arguments fare no better. The District Court did not hold that only point-of-sale confusion counts. It credited the December 2025 email and found that it carried little weight because it was "isolated," "anecdotal," and reflected "at most, an initial assumption." A30–31. That is a weighing of evidence, not the categorical exclusion this Court rejected in *Arrowpoint*, 793 F.3d

at 322–23. The anonymous online review, which complains only that PhillyWine was "not located where they claim," mentions neither party's name. A1005–06 ¶ 53; A1029. And the Daniels declaration, offered first on reply, describes confusion in 2022 arising from WSOP's @phillywine Instagram handle. A3602–04 ¶¶ 6–17. That involves a different designation, and it undercuts Appellant's claim to exclusive use of "PhillyWine."

Upon review, the District Court ultimately concluded that Appellant had failed to establish secondary meaning. *See* A19–21. Among other reasons, the District Court noted that Appellant's "evidence of actual confusion [does not] carry meaningful weight" and that "[e]xclusivity presents a further obstacle." A20.

Appellant's challenge to that finding points to the same evidence the District Court already weighed and asks this Court to weigh it differently. It identifies no finding that lacks support in the record. Where, as here, the District Court's account of the evidence is plausible, its findings stand. *See Anderson*, 470 U.S. at 574.

Accordingly, because Appellant did not establish that it has common law rights in any of its claimed marks, it cannot show that it owns a valid, protectable mark sufficient to sustain a trademark infringement claim. The Court should affirm the District Court's Order denying Appellant's Motion.

### 2. No Likelihood of Confusion

Appellant's failure to show clear error in the District Court's ownership conclusion is enough to end this appeal. Appellant's likelihood of confusion argument presupposes that it owns protectable marks. It does not. Because Appellant has no protectable marks, it cannot sustain a trademark infringement claim even if, *arguendo*, there is some confusion between Appellant's purported mark and WSOP's registered "Philly Wine School" mark. Ownership aside, Appellant also failed to show a likelihood of confusion. Likelihood of confusion is a finding of fact reviewed for clear error. *Am. Home*, 834 F.2d at 370; *Dranoff-Perlstein*, 967 F.2d at 862. Appellant cannot show clear error because there is an adequate basis in the record for all of the District Court's findings. *See Am. Home*, 834 F.2d at 370–71.

In assessing the likelihood of confusion, the District Court looks to the ten factors enumerated in *Lapp*, 721 F.2d at 463:

1. the degree of similarity between the owner's mark and the alleged infringing mark;
2. the strength of the owner's mark;
3. the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
4. the length of time the defendant has used the mark without evidence of actual confusion arising;
5. the intent of the defendant in adopting the mark;
6. the evidence of actual confusion;

7. whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

~~8.~~1. the extent to which the targets of the parties' sales efforts are the same;

~~9.~~2. the relationship of the goods in the minds of consumers because of the similarity of function;

~~10.~~3. other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*A & H Sportswear*, 237 F.3d at 215. The *Lapp* test is qualitative—"[n]ot all factors will be relevant in all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting." *Id.*

WSOP addressed the *Lapp* factors in its opposition brief before the District Court, arguing that most of these factors weigh against a likelihood of confusion. ECF No. 25 at 22–24. The District Court agreed, finding that the seventh and eighth *Lapp* factors weighed in favor of Appellant, while the second factor "weighs against a finding of likely confusion," the fourth, fifth, and sixth factors favor WSOP, and the first, third, and ninth factors were neutral. A26–36; *see* A30–33. Notably, when weighing the factors, the District Court found that "[t]he factors that carry the greatest weight point away from confusion." A35.

Appellant's challenge to the third factor does not change that result. Appellant argues that, because both parties also offer casual, lower-cost classes, the District

Court should have measured care by the least sophisticated consumer rather than finding that the two groups of consumers "offset one another." Br. 32–33 (citing *Ford Motor*, 930 F.2d at 293); A35. Even if that factor favored Appellant, the outcome would stand. The District Court already accounted for the factors favoring Appellant, finding that the overlap in channels, audience, and location "does not outweigh the factors pointing away from confusion": a descriptive mark that "lacks demonstrated marketplace recognition," confusion evidence that was "minimal, recent, and tied to PhillyWine's own more recent use of the phrase," years of coexistence "without any identified instances of confusion," and no evidence that WSOP adopted the phrase "to trade on PhillyWine's goodwill." A35–36. One more factor on Appellant's side would leave those findings, and the weight the District Court gave them, intact. The District Court was entitled to give the factors "different weights depending on the particular factual setting." *A & H Sportswear*, 237 F.3d at 215. And the point matters only if Appellant owns a protectable mark, which it does not.

Notwithstanding that the District Court's consideration and weighing of the factors is a finding of fact, Appellant contends that the District Court's weighing of the factors was legally flawed. Br. 28; *A & H Sportswear*, 237 F.3d at 227. Accordingly, Appellant's challenge to the District Court's likelihood of confusion ruling fails for two equally sufficient reasons: (1) Appellant owns no protectable

mark; and (2) Appellant can show no clear error as to the District Court's factual findings. The District Court's ruling should be affirmed.

### B. Irreparable Harm Cannot Overcome the Failure on the Merits

Below, Appellant argued that WSOP's Instagram complaint had cost it its primary channel for reaching students, and that its @phillywineschool account would be "permanently disabled" by June 16, 2026 unless Appellee KSWCO withdrew the complaint. A1005 ¶ 51; A11–12. The District Court accepted that the loss of the account was irreparable harm. A37–39. But it held that the showing "cannot overcome [Appellant's] failure to satisfy the gateway requirement." A40. That is the rule. "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999); *see Reilly*, 858 F.3d at 179.

Appellant's reliance on the Trademark Modernization Act changes nothing. Br. 47 n.8. The Act's presumption of irreparable harm arises only "upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a); *but see Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 186 (3d Cir. 2022) (TMA not triggered unless plaintiff's evidence establishes "likely trademark infringement"). The District Court found no likelihood of success, so the presumption never arose. And because the District Court found irreparable harm anyway, its reference to the pre-TMA standard (A37) could not have affected the outcome.

Appellant's conduct after the ruling also shows that the harm it described was never as urgent as it claimed. "A failure to move for a preliminary injunction or expedite an appeal indicates that the underlying harm complained of is not serious." *Def. Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193, 201 n.8 (3d Cir. 2020) (movants "did not move for an injunction pending appeal . . . nor did they seek expedited review") (citing *Huminski v. Rutland City Police Dep't*, 221 F.3d 357, 361 (2d Cir. 2000)). Equity "assists the diligent, not the tardy," and a movant's "[d]elay in seeking enforcement of [its] rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

Appellant's conduct here fits that rule. The District Court denied the motion on May 26, 2026, three weeks before the date on which Appellant said its account would be permanently disabled. A4; A11–12. Appellant noticed this appeal on June 5. A1–3. It did not seek an injunction pending appeal (*see* Fed. R. App. P. 8(a)) and it did not move to expedite the appeal. June 16 came and went. Appellant filed its opening brief on September 28, 2026. It had also declined Wallace's previous offers to restore the account if PhillyWine stopped using the @phillywineschool handle. A12; A1920 ¶ 93. Only now does Appellant ask this Court to order an injunction "on an expedited basis." Br. 14, 48. A party facing imminent, irreparable loss seeks

interim relief, and Appellant let its own deadline pass without seeking any. Therefore, its claimed harm cannot justify the extraordinary relief it now requests.

### C. The Equities Favor WSOP

The District Court did not err in finding that the balance of equities weighs against granting injunctive relief. When assessing the balance of equities, courts look "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

The District Court found this balance favored WSOP because the relief sought by Appellant would require WSOP to stop using its registered mark, which was afforded a presumption of validity, and to unwind enforcement efforts taken in reliance on that registration. A39. The District Court recognized that the harms Appellant complains of "are not insignificant, but they do not match the scope of relief it seeks[.]" *Id.* PhillyWine, by contrast, "continues to operate its business through its website and alternative channels." *Id.* After Instagram suspended @phillywineschool, PhillyWine opened a new account, @mywineschool, and its website stayed up. A12; A1127–28. The loss of one social media account does not outweigh the loss of the right to use a registered trademark.

Indeed, the relief sought by Appellant in its Proposed Order (A988–90) is so far reaching that the scope of prohibitions would be nearly impossible to define given

the facts of the case. Specifically, Appellant asked the District Court to recognize its common law rights to the "PhillyWine Marks," including "PhillyWine," "phillywine.com," and "the Philly Wine school." *See* A989; A56 ¶ 20.

Appellant also conceded below that its request to order WSOP to withdraw the Instagram complaint "seeks mandatory and not prohibitory relief," and that "Third Circuit law requires it [to] meet a higher standard of showing irreparable harm." A3826. On appeal, it asks this Court to direct entry of an injunction "on an expedited basis" without saying what that injunction would cover. Br. 14, 48. A movant that cannot define the relief it wants, and concedes that part of it demands a heightened showing, cannot show that the equities favor granting it.

Appellant's narrowed theory on appeal brings the weakness of its remaining designations into clearer focus. Having set aside "Philly Wine School," Appellant now rests its claim on "PhillyWine" and "phillywine.com" alone. Br. 3, 16 n.2. Those designations join two common words: a familiar shorthand for Philadelphia and the product itself. WSOP argued below that those terms are "generic and geographically descriptive" (ECF No. 25 at 32), and the District Court found that the same terminology "appears in use by third parties across the wine community." A20. It likewise found "PhillyWine" built from "common terms that appear in the marketplace in connection with wine-related services," and found the asserted marks weak in commercial strength. A29–30. Because Appellant's claimed marks are

unregistered, they carry no presumption of validity, and the burden of proving them protectable rests on Appellant. *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir. 1986).

That burden includes proving that the term is not generic, and a movant that has not "sustained its burden of proving that [the term] is not generic" has not shown "a likelihood of success on the merits that would justify a preliminary injunction in its favor." *Id.* at 307–08. Appellant has not carried that burden. Its only answer below was that WSOP's own registration was inconsistent with the argument (ECF No. 30 at 11), and it identified no evidence directed to whether the public understands "PhillyWine" as anything more than wine from Philadelphia. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976) ("In [the case of generic terms] any claim to an exclusive right must be denied since this in effect would confer a monopoly not only of the mark but of the product by rendering a competitor unable effectively to name what it was endeavoring to sell."). Recognizing such a right would be akin to letting one shop own "PhillyCheesesteak" while barring every other shop in the city from telling customers it sells Philly cheesesteaks.

Against that showing, Appellant's purported harm is limited to it not being able to use WSOP's registered trademark, a phrase Appellant admits it "did not regularly use" and first adopted in its outward-facing branding in late 2025. A24

(quoting ECF No. 30 at 5); A31. That rebrand, meanwhile, led to the cancellation of at least one WSOP course. A10. Thus, the District Court did not err in concluding that the balance of the equities did not favor Appellant.

### D. The Public Interest Does Not Support an Injunction

Finally, because the District Court found that Appellant had not established a likelihood of success on the merits, it correctly found that issuance of a preliminary injunction was not in the public interest. A40. Appellant does not meaningfully challenge this conclusion, arguing merely that injunctive relief is in the public's interest because it believes there to be a likelihood of confusion between WSOP's use of its registered mark and PhillyWine's use of its claimed marks. Br. 47–48. But as Appellant was unable to show that the District Court committed clear error in finding no likelihood of confusion (largely because Appellant could not demonstrate ownership over the claimed marks), it is likewise unable to show the District Court erred in finding the public interest is not served by granting injunctive relief in this case.

## CONCLUSION

For the reasons set forth above, this Court should affirm the District Court's Order denying Appellant's request for preliminary injunctive relief.

Dated: October 27, 2026

By: */s/ David A. Rodkey*
Christopher C. Nana-Sinkam (ID No. 320189)
David A. Rodkey (ID No. 325698)
Stanford B. Ponson (ID No. 322548)
Samantha A. Gill (ID No. 335915)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
cns@dilworthlaw.com
drodkey@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Appellees KSWCO LLC, SALKEDS LLC, The National Wine School LLC, Alana Zerbe, and Keith Wallace*

## COMBINED CERTIFICATIONS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,701 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with Third Circuit Local Appellate Rule 31.1(c) because the text of this electronic brief is identical to the paper copies, and Webroot SecureAnywhere v. 9.0.45.50 has been run on the file of this electronic brief and no virus was detected.

Pursuant to Third Circuit LAR 28.3(d) and 46.1(e), I hereby certify that I am a member of the bar of this Court.

I hereby certify that on October 27, 2026, I electronically filed the foregoing Appellee Brief with the Clerk of the Court of the United States Court of Appeals for the Third Circuit by using the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 27, 2026

*/s/ David A. Rodkey*
David A. Rodkey