Case No. 26-2423

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

PHILLYWINE LLC,

*Appellant*,

v.

KSWCO LLC, SALKEDS LLC, THE NATIONAL WINE SCHOOL LLC, ALANA ZERBE, and KEITH WALLACE,

*Appellees*.

*On Appeal from the United States District Court for the Eastern District of Pennsylvania in Case No. 2:26-cv-01268 Judge Joshua D. Wolson*

# REPLY BRIEF OF APPELLANT PHILLYWINE LLC

Brian T. Feeney, Esq.
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania 19103

Ian C. Ballon, Esq.
**GREENBERG TRAURIG, LLP**
1900 University Avenue, 5th Floor
East Palo Alto, California 94303

Marc H. Trachtenberg, Esq.
Barry R. Horwitz, Esq.
**GREENBERG TRAURIG, LLP**
360 N. Green Street, Suite 1300
Chicago, Illinois 60607

*Attorneys for Appellant PhillyWine LLC*

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The Standard of Review Does Not Inoculate An Analysis The District Court Did Not Perform .......... 3

A. The District Court Did Not Adequately Explain Its Rationale for 'PhillyWine,' Raising Questions of Law This Court Reviews *De Novo* .......... 3

II. The District Court Was Required to Analyze Each of PhillyWine's Asserted Marks But It Analyzed Only the One Identical to WSOP's Infringing Mark .......... 5

A. PhillyWine Asserted Rights in Philly Wine School, PhillyWine.com and PhillyWine, and the District Court Erred by Failing to Analyze Them All .......... 5

B. The District Court's Conclusory Treatment of 'PhillyWine' Sets Forth No Adequate Basis for its Holdings .......... 9

III. The Record Establishes PhillyWine's Continuous Use of and Secondary Meaning in the PhillyWine Marks .......... 11

A. The Record Speaks for Itself: The District Court and WSOP Each Ignore and Minimize 25 Years and 900 Pages of Archived Website History Showing Continuous Use of PhillyWine .......... 12

B. PhillyWine Claims Rights From Use of the Name on the Website at PhillyWine.com, Not From Mere Registration/Use of that Domain .......... 14

C. Using a Business Name Does Not Detract From the Trademark .......... 14

D. The Customer Declarations Establish Secondary Meaning, and the District Court Made No Finding Discounting Them .......... 15

E. Third-Party Use of "Philly Wine _____" for Other Services Does Not Defeat Exclusivity for Wine-School Services, and Appellees' Own Use of @phillywine Is Intentional Infringement, Not Third-Party Use ........................17

IV. The District Court's Likely Confusion and Equities Rulings Cannot Stand ..........................................................................18

A. When 'PhillyWine' is the Owner's Mark, the Lapp Factors Properly Weighed Can Lead to Only One Conclusion: Confusion is Likely ............................................18

B. The District Court Erred by Not Deciding the Fraud Question ..........................................................................23

V. WSOP's Alternative Grounds for Affirmance Depend on Findings the District Court Did Not Make..........................................23

A. There Is No Genericness Finding to Affirm .............................23

B. The Transfer From Ewing Is Established by Uncontradicted Testimony From Both Sides of the Transaction..........................................................................24

CONCLUSION...........................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. Canfield Co. v. Honickman*,
808 F.2d 291 (3d Cir. 1986) ....................23

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*,
793 F.3d 313 (3d Cir. 2015) ....................4, 9, 11, 20

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992) ....................24

*Brookfield Communs. v. West Coast Enter.*,
174 F.3d 1036 (9th Cir. 1999) ....................6

*Centaur Communs., Ltd. v. A/S/M Communs., Inc.*,
830 F.2d 1217 (2d Cir. 1987) ....................17

*Checkpoint Sys. v. Check Point Software Tech.*,
269 F.3d 270 (3d Cir. 2001) ....................6, 20

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*,
111 F.4th 125 (1st Cir. 2024)....................7, 8

*Davis v. Wells Fargo*,
824 F.3d 333 ....................11

*Deltona Transformer Corp. v. NOCO Co.*,
186 F.4th 1313 (11th Cir. 2026) ....................7

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
442 F.3d 812, 822 (3d Cir. 2006) ....................25

*Dranoff-Perlstein Assocs. v. Sklar*,
967 F.2d 852 (3d Cir. 1992) ....................3, 10

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
30 F.3d 466 (3d Cir. 1994) ....................4

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
930 F.2d 277 (3d Cir. 1991) ....................9, 12, 16, 18

*Girard Polly-Pig, Inc. v. Polly-Pig by Knapp, Inc.*,
217 U.S.P.Q. 1338 (T.T.A.B. 1983) ....................15

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko,"*
614 F. Supp. 3d 114 (E.D. Pa. 2022) ....................15

*Interpace Corp. v. Lapp, Inc.*,
721 F.2d 460 (3d Cir. 1983) ....................18

*Issa v. Sch. Dist. of Lancaster*,
847 F.3d 121 (3d Cir. 2017) ....................12

*Kos Pharms., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004) .................... 4, 5, 10, 11, 12, 17, 19, 20, 21

*Lesende v. Borrero*,
752 F.3d 324 (3d Cir. 2014) ....................8

*Lone Star Steakhouse v. Longhorn Steaks*,
122 F.3d 1379 (11th Cir. 1997) ....................8

*In Re Pathfinder, LLC*,
2023 WL 3168407 (TTAB Apr. 11, 2023) ....................6

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
589 F. 2d 1225 (3d Cir. 1978) ....................9

*St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*,
573 F.3d 1186 (11th Cir. 2009) ....................14

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
127 F.3d 821 (9th Cir. 1997) ....................8

*Telebrands Corp. v. Newmetro Design, LLC*,
2016 WL 8999932 (D.N.J. Nov. 21, 2016) ....................25

*Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co.*,
739 F. Supp. 240 (E.D. Pa. 1990) ....................24

*U.S. v. Dowdell*,
70 F.4th 134 (3d Cir. 2023) ....................6

*U.S. v. Henderson*,
64 F.4th 111 (3d Cir. 2023) ....................................................................8

*U.S. v. Sineneng-Smith*,
590 U.S. 371 (2020)........................................................................5, 7, 19

*USPTO v. Booking.com B.V.*,
591 U.S. 549 (2020)...............................................................................24

*Wash. Speakers Bureau, Inc. v. Leading Auths., Inc.*,
33 F. Supp. 2d 488 (E.D. Va. 1999) ......................................................16

**Statutes**

15 U.S.C. § 1051 ..........................................................................................7

15 U.S.C. §§ 1052(e)(2)-(f) .........................................................................24

15 U.S.C. § 1127 ..........................................................................................15

**Other Authorities**

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair
Competition § 18:4 (4th ed. 2005).........................................................25

Fed. R. Evid. § 602 ......................................................................................16

## INTRODUCTION

WSOP seeks to recast legal errors as factual findings and mischaracterizes PhillyWine's arguments both below and on appeal. The District Court found the record insufficient to establish PhillyWine's likely success on the merits. That is not a factual finding; it's a legal question subject to *de novo* review.

Contrary to WSOP's claims, PhillyWine never argued below that it owned rights *only* in 'Philly Wine School'; PhillyWine also argued below it owned rights in 'PhillyWine' and 'PhillyWine.com,' and the District Court legally erred by failing to analyze PhillyWine's likely success *for those arguments,* an error subject to *de novo* review because the District Court failed to adequately explain its decisions.

The District Court did ***not*** decide the *entire* case for a preliminary injunction Appellant presented. Rather, it legally erred and violated the party-presentation principle by recasting Appellant's argument as a family-of-marks theory. A25–26. The District Court also erred in concluding that the record did not establish PhillyWine's continuous use of its 'PhillyWine' house mark in commerce, and that it instead was more widely known as 'Neil [sic] Ewing Wine Services.' A19. The Court did not substantiate that conclusion with any record citations or otherwise adequately explain why it discounted PhillyWine's 900 pages of its website archive spanning 25 years showing continuous use of PhillyWine and PhillyWine.com on the website located at that domain. WSOP cannot defend the District Court's failure

to address that evidence, so it pays lip service and downplays it as continuous use unsupported “apart from archived web pages.” Opp. at 6, 36. Even if this issue of continuous use is merely a factual finding, it is clearly erroneous and against the manifest weight of evidence given the 25-year website archive.

WSOP’s defense of the District Court cannot salvage its error-riddled conclusion that ‘PhillyWine’ and ‘Philly Wine School,’ both for wine school services (such that ‘school’ is generic) are not confusingly similar, even though precedent requires courts to compare marks with emphasis on their non-generic portions. The same goes for its conclusion that the record did not establish secondary meaning in the mark ‘PhillyWine,” where the District Court failed to explain why it discounted PhillyWine’s 24 declarations attesting to consumer recognition of Appellant’s ‘PhillyWine’ mark. Nor can WSOP viably defend the District Court treating WSOP’s fraudulent registration as presumptively valid in the balance of equities while declining to decide the issue of WSOP’s fraud. A21 n.4; A39.

WSOP makes much of the fact that Appellant did not seek an evidentiary hearing, but this is of no legal consequence and WSOP ties it to no rule of law. PhillyWine had overwhelming evidence in its 900-page website archive and 24 consumer-recognition declarations, which the District Court apparently overlooked in a record spanning nearly 4,000 pages.

Finally, WSOP focuses on PhillyWine's use and loss of its Instagram account, but PhillyWine's irreparable harm and loss of goodwill is about much more than one lost social media account. It is the loss of its ability to control how its mark is used, and prevent further loss of its goodwill, as evidenced by the revelation resulting from publicity surrounding this lawsuit, in 2026, that Kelly Daniels confused the parties *in 2022* and misattributed to PhillyWine her horrible customer service experience with Wallace and WSOP, causing her to decide not to do business with PhillyWine. A360 ¶ 17. That "highly probative" evidence of actual confusion is only the tip of the iceberg. This Court should reverse and order that an injunction be issued.

## ARGUMENT

### I. The Standard of Review Does Not Inoculate An Analysis The District Court Did Not Perform

#### A. The District Court Did Not Adequately Explain Its Rationale for 'PhillyWine,' Raising Questions of Law This Court Reviews *De Novo*

WSOP seeks to cast as a factual finding the District Court's conclusion that PhillyWine was not likely to succeed on the merits of its trademark infringement claim. Opp. at 17–18, 38, 43 (citing *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)). But the errors PhillyWine raises are primarily not evidentiary. The District Court failed to perform the required analysis and explain its rationale regarding Appellant's rights and consumer recognition in 'PhillyWine.'

It also legally erred by misapplying the law on actual confusion and the sophistication of relevant consumers. These are all questions of law.

WSOP agrees conclusions of law are reviewed *de novo*. Opp. at 17 (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). Any determination prerequisite to an injunction "is reviewed according to the standard applicable to that particular determination"; this Court exercises plenary review over the District Court's "conclusions of law and its application of law to the facts." *Kos*, 369 F.3d at 708. *Kos* treated the district court's failure to "properly analyze or weigh the *Lapp* factors" as one of "two fundamental errors of law," not a factual finding. *Id.* at 710. This Court exercised plenary review over the district court's "interpretation, application and conclusions of law," and reversed where the court "misapplied some [factors] and did not consider others." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 n.10, 481 (3d Cir. 1994). The District Court's failure to analyze Appellant's 'PhillyWine' mark under the *Lapp* and *Ford* factors and to adequately explain its rationale for that mark present questions of law about what the law requires, not what the evidence shows.

WSOP quotes the controlling holding here: A district court commits legal error when it fails "to adequately set forth its rationale for discounting [a movant's] evidence." Opp. at 28 (quoting *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 326 (3d Cir. 2015)). WSOP tries to distinguish

*Arrowpoint* as a credibility case, *id.*, but the lower court's failure to explain its rationale there was still legal error, as it is here. The District Court addressed the website archive (A2556–3455) and 24 declarations (A1722–93) only relative to 'Philly Wine School,' but gave no rationale for concluding that they did not establish Appellant's rights in 'PhillyWine.' *See* A19–20, A22–24.

## II. The District Court Was Required to Analyze Each of PhillyWine's Asserted Marks But It Analyzed Only the One Identical to WSOP's Infringing Mark

This Court has recognized that lower courts must clearly state their factual findings and conclusions of law. *See Kos*, 369 F.3d at 712 and n. 10 (where the lower "court analyzed only two of the ten *Lapp* factors," its "conclusory statement" that the other factors did not favor the movant is insufficient as it "does not explain the basis for its holding").

### A. PhillyWine Asserted Rights in Philly Wine School, PhillyWine.com and PhillyWine, and the District Court Erred by Failing to Analyze Them All

As WSOP notes, courts "rely on the parties to frame the issues for decision," and serve "the role of neutral arbiter of matters the parties present." (Opp. at 19 (quoting *U.S. v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)). PhillyWine argued below that it owns rights in ***each of*** 'Philly Wine School,' 'PhillyWine.com' and 'PhillyWine,' which it collectively defined in its opening brief *below* as "the

PhillyWine Marks,"[1] since, for a wine school, all three are virtually the same mark. *See Brookfield Communs. v. West Coast Enter.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (consumers are "likely to associate 'moviebuff.com' with the trademark 'MovieBuff'" and courts "have routinely concluded that" [mark] and [mark].com are "the same mark" or "virtually identical") (collecting cases); *Checkpoint Sys. v. Check Point Software Tech.*, 269 F.3d 270, 281 (3d Cir. 2001) (where "the dominant features" of a mark are "the words 'check' and point,'" added generic terms like "software" and "technologies" "would not lead the average consumer to disassociate the products"); *In Re Pa%8fhfinder, LLC*, 2023 WL 3168407, at *5 (TTAB Apr. 11, 2023) (finding, where "SCHOOLS is generic," that the two marks IMAGINE and IMAGINE SCHOOLS "are similar in sound, appearance, meaning, and create the same commercial impression when applied to educational" services).

The party-presentation principle WSOP invokes shows how the District Court erred. "[L]itigants, not the courts, choose the facts and arguments to present." *U.S. v. Dowdell*, 70 F.4th 134, 141 (3d Cir. 2023). PhillyWine argued below that 'PhillyWine' and 'phillywine.com' are protectable marks and that WSOP's use of 'Philly Wine School' is confusingly similar to them because it "adds a generic term." *See* A25. The District Court did not address that claim. Instead, it recast it as a different theory ("[i]n effect, it invokes a family of marks theory") and then rejected

[1] On appeal, this term refers collectively only to PhillyWine and PhillyWine.com.

that theory. A25–26. But PhillyWine did <u>not</u> invoke the family of marks doctrine. In *Sineneng-Smith*, the Supreme Court held that a court abused its discretion by departing from the principle of party presentation and deciding the case on issues the parties had not raised. 590 U.S. at 380.[2]

WSOP claims that because PhillyWine argued below that it had rights in 'Philly Wine School,' it cannot now argue that the District Court erred by analyzing the issues *only* through the lens of that mark. Opp. at 18-20. Not so. The District Court conceded PhillyWine's 24 declarations "consistently reference familiarity with 'PhillyWine'" (A19-20), and that "indicates that whatever goodwill exists in the marketplace attaches to the 'PhillyWine' name." A24. The District Court, in its role as neutral arbiter of matters the parties present, was obligated to decide whether PhillyWine owned protectable trademark rights in 'PhillyWine.'

The District Court erred by not analyzing the two PhillyWine marks it failed to adequately address. WSOP concedes PhillyWine may narrow the issues on appeal. Opp. at 20. And PhillyWine's reply brief below clarified its case rested on its longstanding exclusive use of the PhillyWine Marks. ECF No. 30 at 4–5. The

[2] While courts may play a "modest initiating role," *id.* at 376, replacing a party's argument with a different one it did not make, and deciding the motion on the replacement, is not a "modest" role. Appeals courts have reversed in Lanham Act cases where a district court decided claims on theories the party did not advance. *See, e.g., D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 111 F.4th 125, 132-33 (1st Cir. 2024) (reversing summary judgment that rested on treating a registered-trademark claim as a trade-dress claim); *see also Deltona Transformer Corp. v. NOCO Co.*, 186 F.4th 1313 (11th Cir. 2026).

District Court did not do the required analysis, and that failure was a legal error. *See Lone Star Steakhouse v. Longhorn Steaks*, 122 F.3d 1379, 1381 (11th Cir. 1997) (vacating where a lower court resolved a preliminary injunction motion as to 'Lone Star Steakhouse & Saloon' and 'Lone Star Steaks,' but "failed to determine the related claim of infringement between 'Lone Star Cafe' and 'Lone Star Steaks,'" and that "omission was erroneous"); *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 829 (9th Cir. 1997) (reversing where the district court "did not explain the basis on which it granted [defendant] summary judgment").

WSOP's invited-error argument (Opp. at 19) also fails because the doctrine applies only when a party's own conduct "encouraged or prompted the trial court to make" the error it challenges. *Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014). This Court distinguishes a party's specific assent to a ruling, which may bar review, from mere acquiescence, which does not. *U.S. v. Henderson*, 64 F.4th 111 (3d Cir. 2023). The First Circuit rejected an invited-error argument where the evidence did not clearly show the appellant had narrowed its claim *below*. *D'Pergo*, 111 F.4th at 133. So too here. PhillyWine asserted three marks. It never asked the District Court to decide the motion on 'Philly Wine School' alone, to treat its argument as a family-of-marks claim, or to weigh the *Ford* or *Lapp* factors as if only 'Philly Wine School' was at issue. Those were the District Court's choices, not PhillyWine's.

### B. The District Court's Conclusory Treatment of 'PhillyWine' Sets Forth No Adequate Basis for its Holdings

The District Court acknowledged PhillyWine asserted rights in all three marks but said the infringement "centers on" WSOP's "use of 'Philly Wine School,'" which it called "the relevant mark for . . . assessing the merits of PhillyWine's claims." A16.

WSOP claims the District Court "addressed" 'PhillyWine.com' and 'PhillyWine' "and found them not distinctive." Opp. at 20 (citing A21). But that is only the first step in a multi-step inquiry. A mark that is not distinctive can still "achieve[] protection if [it] is shown to have secondary meaning." *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F. 2d 1225, 1228 (3d Cir. 1978). The Opinion "addressed" *that issue* only in passing and erred by failing to adequately explain its decision. *See* A19 (stating, with no analysis, PhillyWine's evidence "could demonstrate recognition of" the PhillyWine Marks, "though in my view it doesn't reach that level," before quickly clarifying "in any event, it does not demonstrate that consumers associate the distinct phrase 'Philly Wine School' with PhillyWine"). The District Court made ***zero*** explicit findings on any of the ***eleven*** *Ford* secondary-meaning factors for the PhillyWine Marks. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). It devoted ten pages to discussing PhillyWine's rights in 'Philly Wine School.' A17-26. This is legal error for failing "to adequately set forth its rationale for discounting [PhillyWine's] evidence" as to the PhillyWine Marks. *See Arrowpoint*, 793 F.3d at 326.

The District Court also gave an inadequate rationale and erred by concluding that 'PhillyWine' and 'Philly Wine School,' both for wine schools, "differ in structure, sound and meaning." A28. The same paragraph WSOP cites in *Dranoff-Perlstein* also instructs district courts to "consider the likelihood of confusion between the two marks in their entireties, ***with the emphasis of the inquiry on the non-generic portions of the disputed marks***." 967 F.2d at 862 (emphasis added). Since the term 'School' is generic for both parties, A1161-64; A2047-50; A17, the District Court failed to adequately set forth its rationale and contradicted settled law.

WSOP argues that for the first *Lapp* factor on similarity, the District Court "compared 'PhillyWine' directly with 'Philly Wine School,'" Opp. at 14, *see* Opp. at 20 (citing A28), but it did so in a single short paragraph, giving a neutral rating that blended the two comparisons A28. The first set the two identical phrases 'Philly Wine School' against each other, "weigh[ing] in favor of similarity" but with limited weight given that descriptive phrase and the second set 'PhillyWine' against 'Philly Wine School,' which "differ in structure, sound, and meaning." A28. The District Court found these balanced the factor to neutral but it never said how the factor comes out when 'PhillyWine' is the asserted mark. Nor can the Court affirm on that paragraph as an alternative ground, Opp. at 20–21, as courts must weigh all relevant factors for an asserted mark and explain how they "weighed and balanced the combined factors." *Kos*, 369 F.3d at 712. The District Court never did that for 'PhillyWine.'

WSOP argues that the above statement on the marks differing in structure and meaning, A28, plus the following two District Court findings, answer PhillyWine's "narrower case [on appeal] on their own" (Opp. at 20): (i) PhillyWine's evidence "could demonstrate recognition of" the PhillyWine Marks, "though in my view it doesn't reach that level" (A19); (ii) "I have concluded that 'PhillyWine' is not distinctive" (A21). But these singular sentences do not sufficiently analyze the key issues argued and proven below; they only address them in passing and fail to "to adequately set forth" the District Court's "rationale for discounting [PhillyWine's] evidence." *See Arrowpoint*, 793 F.3d at 326; *Kos*, 369 F.3d at 711-12 (holding the district court erred because its "conclusory statement that [certain *Lapp* factors do not weigh in movant's favor] does not explain the basis for its holding as to each factor . . . or how it weighed and balanced the combined factors"). The District Court's failure to grapple with each *Ford* secondary meaning factor for PhillyWine's house mark is the same type of error committed in *Kos* (relative to the *Lapp* factors).[3]

## III. The Record Establishes PhillyWine's Continuous Use of and Secondary Meaning in the PhillyWine Marks

Even if the Opinion's conclusion that PhillyWine's evidence "could demonstrate recognition of" the PhillyWine Marks, "though in my view it doesn't reach that level" (A19) is purely factual, it is clearly erroneous. So too is the District

[3] Appellant agrees this Court "may affirm on any basis supported by the record" (Opp. at 20-21 (citing *Davis v. Wells Fargo*, 824 F.3d 333, 350)), but that presupposes a record that adequately supports the alternative basis for affirmance, which is not the case here.

Court's conclusion that Appellant's predecessor "did not continuously use the name 'PhillyWine' in commerce" and that "for much of its existence, it marketed itself under the banner 'Neil [sic] Ewing Wine Services.'" *Id.* Under the standard WSOP invokes, a finding fails if it is "completely devoid of minimum evidentiary support" or "bears no rational relationship to the supportive evidentiary data." Opp. at 18 (quoting *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 130–31 (3d Cir. 2017)). A finding that PhillyWine and its predecessor "did not continuously use the name 'PhillyWine,'" A19, bears no rational relationship to the record.

Secondary meaning is measured by the *Ford* factors. Opp. at 38 (citing *Ford*, 930 F.2d at 292). The record speaks to most of them: 25 years of continuous use (A2556–3455); more than 5,600 students and over $4 million in revenue (A997–98 ¶¶ 16, 19); 24 customer and industry declarations (A1722–93); WSOP's intentional taking of the @phillywine handle (A1287 ¶ 11); and actual confusion (A430; A3602–04). The District Court applied none of those facts or factors to 'PhillyWine.' A19–20.

### A. The Record Speaks for Itself: The District Court and WSOP Each Ignore and Minimize 25 Years and 900 Pages of Archived Website History Showing Continuous Use of PhillyWine

WSOP argues "the District Court did not clearly err in finding that PhillyWine only sporadically used 'PhillyWine' in commerce." Opp. at 36 (citing A19). It concedes Ewing registered PhillyWine.com in 2001 but argues "he primarily used 'Neal Ewing Wine

Services' to advertise his business, *id*., citing the District Court's Opinion and, strangely, its own brief below, which relied on Wallace's say-so regarding what Ewing did. That ignores 900 pages showing prominent, ongoing use of the PhillyWine Marks on its website over 25 years, refuting the claim that PhillyWine only used these marks sporadically. *See* A2547 ¶ 7; A2556–3455.

WSOP belittles that evidence, arguing "Ewing never used Instagram,"[4] "and *apart from archived webpages*," Ewing's tenure otherwise included only two newsletters. Opp. at 36 (emphasis added). The italicized words do a lot of heavy lifting to downplay 900 pages establishing 25 years of website use of the PhillyWine Marks. The District Court found phillywine.com "served as the business's primary website and communication platform" since 2001, and conceded that during those years, "PhillyWine operated under the 'PhillyWine' name and domain." A6; A32. But it ignored the ongoing prominent use of the PhillyWine Marks on the site, over 1,550 instances that dwarf the ~350 uses of 'Neal Ewing Wine Services.'[5] WSOP claims these numbers are PhillyWine attributing "to the record facts it does not contain," Opp. 1-2 n. 2, but the 900 pages are all in the record and speak for themselves. Despite WSOP's claim that PhillyWine "identified no evidence" on "whether the public understands 'PhillyWine' as anything more than wine from

[4] Instagram did not exist until 2010; for the last 25 years, a business' website has been its principal means of promoting itself to the public.
[5] *See, e.g.,* A2577–78 (2002); A2658–59 (2005); A2795–96 (2011); A2981–82 (2015); A2818–19 (2020).

Philadelphia" (Opp. at 50), the website archive and 24 declarations prove continuous use, and consumer recognition/association of 'PhillyWine' with Appellant.

### B. PhillyWine Claims Rights From Use of the Name on the Website at PhillyWine.com, Not From Mere Registration/Use of that Domain

The District Court held that the domain name "alone is not enough to establish use, and PhillyWine doesn't argue otherwise." A19. WSOP adds that PhillyWine "never responded" to its argument that registering a domain confers no trademark rights. Opp. at 13–14, 37. But PhillyWine does not contend that registering a domain name, *without more*, creates trademark rights. PhillyWine's claim rests on the prominent, ongoing use, for 25 years, of the PhillyWine Marks *on the phillywine.com website*, to advertise and sell its wine-school services. A2556–3455; *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1207 (11th Cir. 2009) (use of domain name sufficient for service mark protection when "used . . . on each page of the LaserSpecialist.com website"). The District Court completely ignored that 900 pages of the record when it found "much of the evidence establishes that PhillyWine and its predecessor did not continuously use the name 'PhillyWine' in commerce," and that, "[i]nstead, for much of its existence it marketed itself under the banner 'Neil [sic] Ewing Wine Services.'" A19.

### C. Using a Business Name Does Not Detract From the Trademark

WSOP relies on Ewing's declaration that he "operated PhillyWine as a sole proprietorship called Neal Ewing Wine Services," A992 ¶ 3, and on newsletters stating that "Phillywine.com is the web address for Neal Ewing Wine Services,"

A3487–95, to show that the business was not known as PhillyWine. Opp. at 5–6, 36. They show the opposite. Ewing refers to his former business as ‘PhillyWine’; the sole proprietorship was its formal legal name. The use of a formal business name does not prove that business’ trademark, which identifies its services, was not used or does not function as a mark—the two routinely appear together. *See* 15 U.S.C. § 1127; *I.M. Wilson, Inc. v. Otvetstvennostyou “Grichko,”* 614 F. Supp. 3d 114, 143 (E.D. Pa. 2022) (marks used on the same product as the GRISHKO house mark are independent trademarks where they receive their own promotion, were used “in a manner separate and distinct” from the house mark and had their own reputations, where customers “often refer to the[m] by name”); *see* A1722–93; *Girard Polly-Pig, Inc. v. Polly-Pig by Knapp, Inc.*, 217 U.S.P.Q. 1338, 1343 (T.T.A.B. 1983) (POLLY-PIG, displayed on its own line in larger type than the trade name BY KNAPP, INC., made a separate commercial impression and functioned as a mark). The archived pages fit that pattern: “phillywine” is the masthead, set apart in its own lettering, while “Neal Ewing Wine Services” appears once, in a parenthetical in the body text. *See, e.g.,* A2795–96; A2981–82.

### D. The Customer Declarations Establish Secondary Meaning, and the District Court Made No Finding Discounting Them

Twenty-four customers and industry participants attested that they associate ‘PhillyWine’ with Ewing’s business and Appellant, its successor. A1722–93. Eighteen of the 24 declarants are current or former students. *Id.* Customer testimony

is one of the *Ford* factors. 930 F.2d at 292. The District Court found these declarations "consistently reference familiarity with 'PhillyWine,'" A19–20, and that "whatever goodwill exists in the marketplace attaches to the 'PhillyWine' name." A24. It only set them aside because they did not concern "Philly Wine School." *Id.* The District Court's analysis thus supports PhillyWine's claims as to the mark 'PhillyWine.'

WSOP now argues that the declarants are PhillyWine's "friends," relying on a footnote in an out-of-circuit district court decision. Opp. at 40 (citing *Wash. Speakers Bureau, Inc. v. Leading Auths., Inc.*, 33 F. Supp. 2d 488, 498 n.23 (E.D. Va. 1999)). The District Court made no such finding, and WSOP cannot supply one on appeal. WSOP's argument would also defeat its own evidence. The declarations it submitted to the USPTO to obtain its registration[6] came from ten of its own students and alumni, the same categories PhillyWine submitted. Opp. at 4 (citing A1199–1214).

WSOP also faults Kirkland's revenue and advertising figures for not being in written "records." Opp. at 6, 39. Sworn testimony from a witness with knowledge is competent evidence. Fed. R. Evid. 602. At the preliminary-injunction stage, a court "may rely on affidavits and hearsay materials which would not be admissible

[6] WSOP claims the declarations attest to awareness of its use "of 'Philly Wine School' to as early as 2013," Opp. at 4, but they nearly all lack handwritten signatures, and two claiming use dating back to 2014 and 2016 have no signature at all. A1208-11.

evidence for a permanent injunction.” Opp. at 25 (quoting *Kos*, 369 F.3d at 718); *see* A14. WSOP invokes that rule to defend the District Court’s reliance on third-party articles. Opp. at 25. It cannot apply the rule only to its own evidence.

### E. Third-Party Use of “Philly Wine _____” for Other Services Does Not Defeat Exclusivity for Wine-School Services, and Appellees’ Own Use of @phillywine Is Intentional Infringement, Not Third-Party Use

The District Court found exclusivity “a further obstacle” because “similar terminology appears in use by third parties across the wine community.” A20 (citing ECF No. 25 at 19–20). The uses WSOP identified are a wine festival, a bottle shop, an events business, and some Instagram accounts. A1917–18 ¶ 72(c). Not one is a wine school. A2552 ¶¶ 34–36. Exclusivity is measured among uses for the same type of services. *See Centaur Communs., Ltd. v. A/S/M Communs., Inc.*, 830 F.2d 1217, 1221-22 (2d Cir. 1987) (noting for secondary meaning evidence, “only a segment of consumers,” not the general public “need be examined,” and “it is only necessary to show that a substantial segment of [that] relevant group of consumers made the requisite association”). Other uses of “Philly” and “wine” to sell wine or hold festivals says nothing about whether relevant *consumers of wine education* identify ‘PhillyWine’ with a specific wine school.

That leaves WSOP’s @phillywine Instagram handle. Opp. at 3–4, 39 & n.9. The record includes uncontroverted evidence that Wallace “took the Instagram handle @PhillyWine to mess with or upset Neal” Ewing, so that people looking for

Ewing would find Wallace instead. A1287 ¶ 11. Wallace never denied it. A3657 ¶ 13. And it caused confusion: Kelly Daniels believed WSOP was affiliated with PhillyWine because of it. A360 ¶17. The record established copying and actual confusion, two *Ford* factors that favor PhillyWine, 930 F.2d at 292. Third party use in other fields does not, as a matter of law, prove a mark lacks secondary meaning.

## IV. The District Court's Likely Confusion and Equities Rulings Cannot Stand

### A. When 'PhillyWine' is the Owner's Mark, the Lapp Factors Properly Weighed Can Lead to Only One Conclusion: Confusion is Likely

WSOP does not defend the District Court's erroneous claim that the third factor is neutral, where it "offset" casual consumers with sophisticated ones. A35. WSOP merely argues that, even if the District Court got it wrong, that would not change the result. Opp. at 44-45. But that argument wrongly assumes the District Court got the other factors right.

The *Lapp* test compares two marks: "the owner's mark and the alleged infringing mark." A26 (quoting *Interpace Corp. v. Lapp, Inc*., 721 F.2d 460, 463 (3d Cir. 1983)). But while the District Court found that any goodwill PhillyWine holds "attaches to the 'PhillyWine' name" (A24, *see also* A30 ("at most, some recognition in the marketplace attaches to 'PhillyWine,' not to 'Philly Wine School'")), the District Court's analysis of the "owner's mark" focused on 'Philly Wine School' for all the factors it said "carry the greatest weight," A35, namely, factors two (strength of the mark), five (intent), and four and six (length of coexistence time without actual confusion and evidence of confusion).

As WSOP notes, the District Court found the second factor weighs against Appellant, A29-30, because, according to WSOP, 'PhillyWine' is "a descriptive mark that 'lacks demonstrated marketplace recognition.'" Opp. at 45 (quoting A35). But that is because the District Court's misdirected exclusive focus on Appellant's claim to own 'Philly Wine School,' its ignoring 24 declarations establishing consumer association of the name 'PhillyWine' and its erroneous application of the law. The second factor considers "the strength of the owner's mark." A26. The defendant's mark "is not relevant" to that inquiry. *Kos*, 369 F.3d at 715. But the District Court still assessed strength "collectively" across both 'PhillyWine' *and* 'Philly Wine School' and, regarding commercial strength, asked whether consumers associate "the asserted marks—particularly 'Philly Wine School'—with PhillyWine." A29–30. Besides ignoring the 24 declarations of consumer recognition for 'PhillyWine,' the District Court claimed that "the marks" do not "function together as a cohesive branding scheme," A30, the test for *a family of marks*, a theory not advanced by PhillyWine that the District Court substituted for PhillyWine's arguments in violation of the party-presentation principle. *See Sineneng-Smith*, 590 U.S. at 380.

On the fifth factor of intent, WSOP argues record included "no evidence that WSOP adopted the phrase 'to trade on PhillyWine's goodwill" (Opp. at 45, quoting A36)—but that is again based on a clearly erroneous application of the law. The District Court framed the intent inquiry as "whether KSWCO adopted or used 'Philly Wine

School' to capitalize on the goodwill and reputation associated with that mark." A32. There, "that mark" is "Philly Wine School." *Id.* The proper question is whether the defendant adopted its mark to trade on the goodwill of the owner's mark. *See* A31 (quoting *Checkpoint*, 269 F.3d at 286) (defendant's "intentional, willful and admitted adoption of a mark closely similar to the existing marks"). Measured against 'PhillyWine,' the record reflects Allen's unrefuted testimony that Wallace "took the Instagram handle @PhillyWine" to "upset Neal" and divert customers. A1287 ¶ 11. Wallace never denied it. A3657 ¶ 13. The District Court's intent discussion *never* mentions that testimony,[7] and provides no rationale for discounting it, violating the rules in *Kos* and *Arrowpoint* requiring courts to explain the basis for their holdings. A31–33; *Kos*, 369 F.3d at 712 and n. 10; *Arrowpoint*, 793 F.3d at 326.

Finally, as to factors four and six, WSOP cites the District Court's belief that "confusion evidence was 'minimal, recent and tied to PhillyWine's own more recent use of the phrase," while also claiming there were "years of coexistence 'without any identified instances of confusion.'" Opp. at 45 (citing A35). But as PhillyWine explained in its opening brief, the record reflects *zero* evidence of WSOP's *own* use of the phrase 'Philly Wine School' *in writing* before late 2024—such that WSOP has *no written evidence* that it engaged in a deliberate ongoing program to commercially exploit that

[7] The testimony is compounded by that of Charles Austermuhl, who stated Wallace had a perceived rivalry with Ewing and PhillyWine and often denigrated them. A1768, ¶ 7.

mark before late 2024. There were no "years of coexistence" with no confusion, as supported by the District Court's own finding that WSOP's own "outward-facing branding" of 'Philly Wine School' happened only recently, "including changes to its social media presence in 2024 and 2025." A32. Over 25 years in which WSOP, the junior user, had its 'Philly Wine School' mark appear in writing only twice in third-party articles in 2005 and 2017, and not *as its own use until 2024*, there was no chance for consumers to encounter the 'Philly Wine School' mark at all—and until late 2024, no opportunity for consumers to confuse WSOP's use of 'Philly Wine School' with Appellant's 'PhillyWine' mark. The District Court did not reconcile those findings. Nor did it or could it reconcile its statement that "dating back to the mid-2000s," PhillyWine "operated under the 'PhillyWine' name and domain," A32, with its earlier claim that PhillyWine "did not continuously use the name 'PhillyWine' in commerce," A19.

The District Court's discounting the record evidence establishing actual confusion as "isolated" and "anecdotal" and because no one "paid the wrong provider," A30-31, is exactly what *Kos* rejected. *Kos*, 369 F.3d at 720. Evidence of actual confusion "is difficult to find . . . because many instances are unreported," so "anecdotal evidence of confusion" is rare and "even a few incidents" are "highly probative," with "*very little proof* of actual confusion [being] necessary to prove likelihood of confusion." *Id.* (cleaned up).

The key question for factor six is whether consumers who encounter the defendant's mark confuse it with the owner's mark. On that question the record runs one

way. A PhillyWine student who saw WSOP's course advertised as 'Philly Wine School' wrote to PhillyWine's co-owner, "I thought it was your school." A430; *see* A1005 ¶ 52; A1027. In 2022, Kelly Daniels refused to conduct business with PhillyWine because of her horrible customer service experience with WSOP and her mistaken belief that WSOP *was* PhillyWine, caused by WSOP using the Instagram handle @phillywine. A360 ¶ 17. WSOP calls that "a different designation." Opp. at 42. But the designation was "phillywine," PhillyWine's house mark. Ms. Daniels' confusion between the two schools caused by WSOP's use of PhillyWine's name is direct evidence of confusion.[8]

WSOP's answer, that PhillyWine "caused the confusion it now invokes" by calling itself "PhillyWine School" (Opp. at 16, 41), rests on the same substitution. If 'PhillyWine' is the asserted owner's mark *for a wine school*, it does not matter which party first added the generic term "School." What matters is that consumers mistook WSOP's 'Philly Wine School' for PhillyWine. That is what the student's email says. And the same thing happened to Ms. Daniels: Wallace *admitted he took @PhillyWine on Instagram to misdirect consumers* and Ms. Daniels' testimony *proved that Wallace's scheme worked*. PhillyWine presented all of this "highly probative" actual confusion evidence below but the District Court erroneously discounted it and failed to adequately explain why.

---

[8] It is striking that WSOP notes the Daniels' declaration was "offered first on reply." Opp. at 42. That is because Ms. Daniels *only realized she had been confused* in 2026 after PhillyWine filed the motion for a preliminary injunction and the *Philadelphia Inquirer* published an article about this lawsuit. A360 ¶¶ 17-18.

### B. The District Court Erred by Not Deciding the Fraud Question

WSOP defends the District Court's failure to address WSOP's fraud before the USPTO by arguing that PhillyWine did not show "close to clear and convincing evidence that WSOP procured its registration through fraud." Opp. at 28. Even if so, that is a finding the District Court should have made, and erred by failing to decide. WSOP claims its registration's Section 2(f) record "adds third-party references of WSOP using 'Philly Wine School' from 2017 through 2024 (Opp. at 4 (citing A1179-86), while failing to acknowledge that (i) A1179 is not a third-party reference, but Wallace's blog disguised as an independent wine school review site (but he told the USPTO it was independent) (A66 ¶ 49; A78–79 ¶¶ 81–84; A1919 ¶¶ 78, 82; A3656–57 ¶¶ 4–11); (ii) A1181 is not a reference to WSOP, it is the online bio for a teacher for PhillyWine who Wallace knows never taught at WSOP (A1918 ¶ 75; A418); and (iii) A1184 does not refer to WSOP, but to WSET courses and WSOP knows it does not offer such courses. A1918–19 ¶¶ 76–77; A8.

## V. WSOP's Alternative Grounds for Affirmance Depend on Findings the District Court Did Not Make

### A. There Is No Genericness Finding to Affirm

WSOP argues that Appellant's PhillyWine mark is generic (Opp. at 49–50, citing ECF No. 25 at 32), but the District Court made no finding on this. It called the mark "not distinctive" (A21) and "somewhat more distinctive" than the phrase 'Philly Wine School' (A29), but that is the vocabulary of descriptiveness, not genericness. Whether a mark or term is generic is a question of fact *See A.J. Canfield*

*Co. v. Honickman*, 808 F.2d 291 (3d Cir. 1986); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1039–40 (2d Cir. 1992) (collecting cases, including from this Circuit). A genericness finding is a "fateful step" courts do not take without evidence of what the relevant public understands the term to mean, because a generic term can never be protected. *See USPTO v. Booking.com B.V.*, 591 U.S. 549, 553, 556–57 (2020). There is no such finding here, and this Court does not make factual findings in the first instance. Plus, the record would not support one: a generic term names the genus of goods or services, *id.* at 553, and the services here are wine education, not "wine." And a geographic term combined with a product or service is descriptive, not generic, and is protectable on a showing of secondary meaning. 15 U.S.C. § 1052(e)(2), (f); *see Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co.*, 739 F. Supp. 240, 244 (E.D. Pa. 1990) (marks "combin[ing] a geographic term with the service offered" are descriptive). WSOP's mark was initially refused as requiring a disclaimer of generic words "WINE SCHOOL," and as the overall mark PHILLY WINE SCHOOL is primarily geographically *descriptive*, not generic. A10; A1160-64.

### B. The Transfer From Ewing Is Established by Uncontradicted Testimony From Both Sides of the Transaction

Although the District Court assumed Ewing assigned and transferred the rights to the PhillyWine Marks, A22 n. 6, WSOP asks this Court to affirm on the ground that PhillyWine did not establish it succeeded to Ewing's rights. To be clear, there is no

evidence to suggest the transfer did *not* occur or that Ewing withheld any rights, and transfers of common law marks need not be in writing. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:4 (4th ed. 2005).

Despite WSOP's claims, Ewing is not an "interested party." He is not a party to this case, and no evidence suggests he has a stake in its outcome. Both sides of the transaction testified to it (Ewing, A993 ¶ 9; Kirkland, A996 ¶ 11), and no evidence contradicts that testimony. The main registration record showing the December 2022 update (A119) and Ewing's August 2022 email to the new owners (A162–-63) both corroborate it. WSOP cite to *Doeblers' Pa. Hybrids, Inc. v. Doebler* is inapposite: there, only one side of the transaction, also a party to the case, offered self-serving testimony. 442 F.3d 812, 822 (3d Cir. 2006). But here, both assignor and assignee have testified to the transfer. A993 ¶ 9, A996 ¶ 11. That is the exact fact pattern *Doeblers'* holds is sufficient to establish a mark was assigned. 442 F.3d at 822 ("clear and uncontradicted oral testimony" can establish an assignment of a common law trademark); *see Telebrands Corp. v. Newmetro Design, LLC*, 2016 WL 8999932, *14 (D.N.J. Nov. 21, 2016) (finding plaintiff "likely to demonstrate it received any trademarks owned by Daka," where plaintiff submitted "a sworn declaration from Jesse Chow of Daka attesting to the assignment's existence," which is enough to show likely success on the merits).

## CONCLUSION

The record presented to the District Court was sufficient to establish that PhillyWine is likely to succeed on the merits. Accordingly, this Court should reverse and remand with instructions that the District Court issue the preliminary injunction PhillyWine requested below.

Respectfully submitted:

**GREENBERG TRAURIG, LLP**

Dated: November 17, 2026

/s/ *Brian T. Feeney*

Brian T. Feeney, Esq.
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA 19103
215-988-7812
brian.feeney@gtlaw.com

Ian C. Ballon, Esq.
**GREENBERG TRAURIG, LLP**
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
ballon@gtlaw.com

Barry Horwitz, Esq.
Marc Trachtenberg, Esq.
**GREENBERG TRAURIG, LLP**
360 North Green Street, Suite 1300
Chicago, IL 60607
barry.horwitz@gtlaw.com
trachtenbergm@gtlaw.com

*Attorneys for Appellant PhillyWine LLC*

## CERTIFICATE OF SERVICE

I, Brian T. Feeney, hereby certify that on November 17, 2026, an electronic copy of Appellant's Reply Brief was served by notice of electronic filing via this Court's CM/ECF system upon all counsel of record.

Upon notification that the electronically-filed Reply Brief has been accepted as sufficient, ten (10) hard copies of this Reply Brief will be submitted to the Clerk. See L.A.R. 31.1.

*/s/ Brian T. Feeney*
Brian T. Feeney

# **CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS WITH LOCAL RULE 31.1 1.**

1. This brief complies with the word limits of Fed. R. App. P. 32(a)(7)(B) because it contains 6,494 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font for text and 12 point font for footnotes.

3. This brief complies with the privacy redaction because it has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission requirement, because it will be an exact copy of the paper document.

5. The brief is free of viruses because it has been scanned for viruses with the most recent version of the firm's scanning program.

Dated: November 17, 2026

*/s/ Brian T. Feeney*
Brian T. Feeney

## CERTIFICATE OF BAR MEMBERSHIP

I, Brian T. Feeney, hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

*/s/ Brian T. Feeney*
Brian T. Feeney